S.A.B., D.O., Relator,

v.

Honorable Michael D. SCHATTMAN, Judge, 348th District Court, Tarrant County, Texas, Respondent.

No. 2–92–075–CV.

Court of Appeals of Texas, Fort Worth.

Aug. 18, 1992.

---

1. To the extent that *McKinney* is inconsistent with my views as expressed herein, we should overrule *McKinney.*

Hirsch, Glover, Robinson & Sheiness, P.C., Michael D. Miller and Tina Snelling, Houston, for relator.

Morgan & Weisbrod, Les Weisbrod, Michael S. Box, and William A. Newman, Dallas, for real party in interest (Hobbs).

Dunn, Kacal, Adams, Pappas & Law, Daniel D. King and Nancy Vassallo, Houston, for real party in interest (Gonzalez).

Before FARRIS, MEYERS and DAY, JJ.

## OPINION ON REHEARING

MEYERS, Justice.

Our opinion and judgment dated June 4, 1992, are withdrawn and the following substituted therefor.

This court granted relator S.A.B., D.O's motion for leave to file a writ of mandamus and for emergency relief. Relator, who is a codefendant in the underlying medical malpractice cause of action, signed an Impaired Health Professional's Treatment Contract on November 7, 1990, with the Texas State Board of Medical Examiners. Plaintiffs, who are the real parties in interest, seek to obtain by subpoena duces tecum to their notice of deposition upon written questions all records of relator's treatment for drug addiction and related mental health problems. The subpoena notice was to Timberlawn Psychiatric Hospital, Edgar P. Nace, M.D., and A.G. Patel, M.D. Relator, on March 19, 1992, filed her motion and brief to quash the scheduled depositions with a hearing set before the respondent on March 23, 1992. The respondent, Judge Michael Schattman, by written order on March 31, 1992, denied relator's motion to quash. Relator then filed a second motion to quash with the court on April 2, 1992, alleging federally protected privileges but no hearing was set for this motion since relator's records had already been distributed by the court reporter on that date. Because we granted relator's application to file her motion for writ of mandamus, the real party in interest has since returned all copies of relator's records to the court and

the respondent has informed us that they are now in his possession.

We do not find that the respondent has abused his discretion in denying relator's motion to quash. Therefore, we deny relator's requested relief of mandamus.

The relator, in the application for writ of mandamus, seeks to protect her medical records from discovery based not only upon the privilege set forth in rules 509 and 510 of the Texas Rules of Civil Evidence, but also seeks the protection set forth in 42 U.S.C.S. §§ 290dd and 290ee (Law Co.-op. Supp.1991) and under constitutional rights to privacy. Because the record before us reflects only that the respondent was called upon to rule on the relator's motion to quash based solely on rules 509 and 510, Texas Rules of Civil Evidence, we will not enlarge the relator's request to secure any federal protection as will be discussed further.

■■■ Although the scope of discovery rests within the discretion of the trial court, *Ginsberg v. Fifth Court of Appeals*, 686 S.W.2d 105, 108 (Tex.1985), mandamus will lie to vacate orders which are void and for which there is no adequate remedy on appeal, or where there has been a gross abuse of discretion. *State v. Sewell*, 487 S.W.2d 716, 718 (Tex.1972). An abuse of discretion occurs when the trial court's action is arbitrary, unreasonable, or based upon a gross and prejudicial error of law, *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 918 (Tex.1985, orig. proceeding), or is without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). By attacking the respondent's order on the grounds of a clear abuse of discretion, relator has assumed the heavy burden of establishing that the respondent lacked the discretion to make the decision entered because the facts and law required a different decision. *Johnson*, 700 S.W.2d at 917–18.

The underlying lawsuit involves claims of negligence by the plaintiffs against defendants S.A.B. (relator) and Gonzalez concerning the birth of their child who suffered brain damage at D.F.W. Medical Center in Euless, Texas, on September 26, 1989. The plaintiffs' claims against the relator include that she was addicted to drugs and/or alcohol during the time of the plaintiffs' injuries, and that she failed to inform the D.F.W. Medical Center that she was experiencing such problems. Approximately one year after the minor plaintiff's birth, relator entered Timberlawn Psychiatric Hospital for treatment of her addiction. The plaintiffs now seek copies of all these records in the subpoena to the hospital and the treating physicians, and have offered the contract between relator and the Texas State Board of Medical Examiners as proof of her dependence and abuse.

■■ The permissible scope of discovery includes "anything reasonably calculated to lead to the discovery of material evidence," but overly broad requests, harassment, or *disclosure of privileged information exceeds that scope*. *Jampole v. Touchy*, 673 S.W.2d 569, 573 (Tex.1984, orig. proceeding). TEX.R.CIV.EVID. 510 sets out the psychotherapist/patient privilege in Texas. This rule provides that confidential communications between a mental health professional and a patient, relative to or in connection with any professional services rendered by the professional to the patient, are privileged and may not be disclosed. Records of the identity, diagnosis, evaluation, or treatment of a patient by a psychologist/psychiatrist that are created by that professional are also confidential and privileged and may not be disclosed.

The plaintiffs below contend that they are entitled to relator's medical records under certain exceptions to these rules namely TEX.R.CIV.EVID. 509(d)(4) and 510(d)(5). Rules 510(d)(5) and 509(d)(4) are identically worded exceptions—510(d)(5) dealing with the mental health privilege and 509(d)(4) dealing with the physician/patient privilege.

The original professional/patient health privilege (pre–1983 Rules of Evidence) was first enacted in TEX.REV.CIV.STAT.ANN. art.

5561h,[1] a statute which provided no exception similar to that found in what is now rule 510(d)(5). In 1983, the Rules of Evidence were adopted by the Texas Supreme Court, and an exception was written to the mental health privilege that was limited to a proceeding in which the *patient* sought to recover damages for mental or emotional harm.

■ In 1984, the Supreme Court amended rule 510(d)(5) to expand the exception. Under the 1984 amendments, the rule 510(d)(5) exception authorized disclosure of mental health information when:

> [R]elevant to an issue of the physical, mental or emotional condition of a *patient* in any proceeding in which *he* relies upon the condition as an element of *his* claim or defense....

Tex.R.Evid. 510(d)(5) (Vernon 1984) (emphasis added). However, in 1988 the Texas Supreme Court once again amended rule 510(d)(5), and once again broadened the exception. The 1988 amendments authorized disclosure:

> [A]s to a communication or record relevant to an issue of the physical, mental or emotional condition of a patient in any proceeding in which *any party* relies upon the condition as a part of the *party's* claim or defense.

Tex.R.Civ.Evid. 510(d)(5) (emphasis added).

As authority for their claim to gain access to the relator's medical records under the rules, the plaintiffs rely upon *Kentucky Fried Chicken v. Tennant*, 782 S.W.2d 318 (Tex.App.—Houston [1st Dist.] 1989, orig. proceeding) which was one of the first cases to address the 1988 amendment to the rules. In *Kentucky Fried Chicken*, the plaintiffs suffered from food poisoning and sued Kentucky Fried Chicken. During discovery, Kentucky Fried Chicken obtained records showing that one of the plaintiffs had been treated for an overdose of drugs and alcohol, and another plaintiff had been under psychiatric care. Since the plaintiffs were claiming mental anguish resulting from the food poisoning, Kentucky Fried Chicken contended that the psychiatric record might prove that much of the plaintiffs' mental anguish and worry were caused by other problems of the plaintiffs and were not the result of any harm caused by Kentucky Fried Chicken. The plaintiffs asserted the privilege under rule 510 and the trial court upheld the plaintiffs' privilege. The First District Court of Appeals in Houston held on mandamus that:

> *KFC has placed the plaintiffs' mental conditions in controversy by alleging a connection between the plaintiffs' psychiatric histories and their claims for damages.*
>
> Psychiatric records relevant to a party's defense are discoverable.
>
> *Upon KFC's demonstration of relevance, the burden shifted to the plaintiffs to plead and prove the records were not relevant.*
>
> Plaintiffs failed to either plead or prove why their psychiatric records were not relevant to KFC's defense.

*Id.* at 320–21 (emphasis added).

While failing to specifically so state, the Houston 1st Court of Appeals indirectly upheld the prohibition against an offensive use of the rule for which the plaintiffs were seeking protection from disclosure. Unfortunately for the plaintiffs herein, the relator has not actually made her mental condition or state of mind an issue or defense. She did, however, deny in her deposition that she was addicted at the time of the occurrence which has made the basis of the lawsuit. *Kentucky Fried Chicken* does not speak to the specific facts which we now have before us.

To counter plaintiffs' reliance on the rules amendment, relator points to a couple of cases from the Houston 14th Court of Appeals to prohibit the discovery of her records. In *Scheffey v. Chambers*, 790 S.W.2d 879 (Tex.App.—Houston [14th Dist.] 1990, orig. proceeding) the court, on facts somewhat analogous to these, denied discovery to the real party in interest of the defendant doctor's medical records for

---

**1.** Act effective Aug. 27, 1979, 66th Leg., R.S., ch. 239, 1979 Tex.Gen.Laws 512, *amended by* Act effective Sept. 1, 1983, 68th Leg., R.S., ch. 511, §§ 2, 4, 1983 Tex.Gen. Laws 2970, 2972–74.

his treatment at a California hospital for drug dependence. The decision of the court rested solely on its narrow interpretation for the rule 510(d)(5) amendment, that being to prevent the offensive use of the physician/patient privilege (e.g., when a party places his physical or mental condition in issue and then attempts to offensively use a privilege to conceal evidence of that condition). *Scheffey*, 790 S.W.2d at 881. Since the relator did not bring the litigation in *Scheffey* and was not using the privilege offensively, the majority held that the real party in interest could not discover the doctor's medical records. *Id.* Justice Ellis filed a dissent in *Scheffey* interpreting the rule closer to its literal meaning than what the majority held. Justice Ellis stated:

> The issue that was before Judge Chambers had to do with whether there exists an exception to Dr. Scheffey's privilege *under the facts and circumstances of this case.* The exceptions to Dr. Scheffey's privilege making the Las Encinas Hospital records *discoverable* are TEXAS RULES OF CIVIL EVIDENCE 509(d)(4) and 510(d)(5). In his Petition, Dr. Scheffey states that these rules "... are intended to prevent the *offensive* use of the physical/mental health professional/patient privileges." This statement overlooks the clear and unequivocal language used in these rules creating the exception regarding records or communications which may be relevant to "... an issue of the physical, mental, or emotional condition of *a patient in any proceeding* in which *any party* relies on the condition as part of the party's *claim or defense.*" (Emphasis added).
>
> The nature and the extent of Dr. Scheffey's cocaine addiction and its attendant physical and mental effects upon him form the basis of the Watsons' case. If the Las Encinas Hospital records are not at the very least *discoverable*, then the Watsons would be precluded from challenging Dr. Scheffey's self-serving testimony that he was not under the influence of cocaine while treating any patients at his office or at any hospital. The Watsons would be further precluded

from challenging Dr. Scheffey's self-serving testimony that his cocaine use had no effect on him during non-use periods and did not effect [sic] his care or treatment of Mr. Watson. Finally, the Watsons would be precluded from challenging Dr. Scheffey's self-serving testimony that he has never been at the hospital during an immediate post-use period.

*Id.* at 882 (Ellis, J., dissenting).

The relator here also relies on the Houston 14th Court of Appeals in *Dossey v. Salazar*, 808 S.W.2d 146 (Tex.App.—Houston [14th Dist.] 1991, orig. proceeding) which reinforced the court's previous interpretation of the rule in *Scheffey*. The 14th Houston appeals court in *Dossey* did acknowledge that *Dossey* and *Scheffey* were to be interpreted under the 1988 rule changes to 510 and 509, but that the broadening language of the amendment, of who could evade the privilege, was only placed there to correct a problem in the probate area of law. *Id.* at 148. It again relied on whether the privilege was being used offensively to evade discovery in denying disclosure of the relator's medical records to the real party in interest.

Possibly in response to Justice Ellis's reasoning in the dissenting opinion in *Scheffey*, the *Dossey* court provided an additional reason for its decision.

> If a plaintiff could gain access to a defendant's mental health information merely by making a claim regarding the condition, patients would be deterred from ever seeking such emotional guidance, and this violates the very nature of psychological/psychiatric treatment which requires free and complete disclosure of all thoughts and feelings of the patient. *Gaynier v. Johnson*, 673 S.W.2d 899 (Tex.App.—Dallas 1984, orig. proceeding); *See also* Comment, *The Psychotherapist–Patient Privilege in Texas*, 18 HOUS.L.REV. 137, 141–42 (1980).

*Id.*

Neither the *Scheffey* or the *Dossey* opinions from the Houston 14th Court of Appeals were reviewed by our Supreme Court since both cases were resolved by settle-

ments prior to further appeal. There is, however, one additional source of comment to the rules amendment, which may be relevant. In Volume 33 of the Texas Practice Series the Commentators state:

> Civil Rule 510(d)(5) is one of the most important of the exceptions to the privilege. As most recently amended by the Supreme Court, this exception vitiates much of the privilege's force. . . .
>
> . . . .
>
> It is to be stressed that the present wording of the exception *draws no distinction on the basis of which party is relying on the patient's medical condition.* Indeed, it is no longer accurate to refer to this as the "patient"-litigant exception.

33 S. Goode, O. Wellborn & M. Sharlot, Guide to the Texas Rules of Evidence: Civil and Criminal § 510.4 (Texas Practice 1988).

We find it difficult to align ourselves with the reasoning of the *Dossey* opinion which ignores the clear language of the amended rules to somehow conclude that the 1988 amendment was propagated solely to eliminate a problem in the probate area of the law. If in fact this was the Supreme Court's purpose, they somehow disguised their intent so that only the *Dossey* court could somehow reach this strained conclusion. We do not believe our lawmakers think and write this way. The language of the 1988 amendment is clear and most of all it somehow makes sense in this litigious environment in which we now live. The fears of parties not seeking mental or psychiatric counseling which the Houston 14th Court of Appeals tries to alleviate by circumventing the amendment's obvious intent are also misplaced. If not, then we will again turn to the Supreme Court to correct a problem which they would have created. The respondent, Judge Michael Schattman, correctly interpreted the meaning and intent of rule 510(d)(5) and rule 509(d)(4), Texas Rules of Civil Evidence and therefore did not abuse his discretion in so ruling.

■ The real parties in interest have also urged us to reject relator's argument for protection based upon plaintiffs' claims of waiver and mootness. We do not find that the relator has waived her right to seek this mandamus by voluntarily placing these records with other parties in a totally different lawsuit, with the prohibition against its dissemination to any other entity or person without her permission. Additionally, since all of the records in question were retrieved by the respondent we therefore do not find the question before us to be moot.

■ Lastly, we cannot now find that the relator's medical records are protected by federal or constitutional law. Relator filed a second motion to quash the subpoena on April 2, 1992, after Judge Schattman's ruling of March 31, 1992. The new objection consisted of privileges afforded by 1) 42 U.S.C.S. §§ 290dd–3 and 290ee–3, and 2) constitutional right to privacy. The relator made no mention of these federal protections in her original motion to quash which was heard on March 23, 1992, and ruled upon a week later on March 31, 1992. We cannot now hold that the respondent abused his discretion on evidence not presented for his review. These new objections were not timely. *See Thomas & Betts Corp. v. Martin,* 798 S.W.2d 366, 367–68 (Tex.App.—Beaumont 1990, orig. proceeding); Tex.R.Civ.P. 177a. Additionally, there is nothing in the record before us reflecting whether in fact these medical records would be protected under federal statute or constitution, or that the records were somehow produced by an institution regulated or directly or indirectly assisted by a department or agency of the United States.

We therefore deny requested relief of mandamus and reinstate respondent's order denying relator's motion to quash subpoena.