**R.K., M.D., Relator,**

v.

**The Honorable Mario E. RAMIREZ, Jr., Respondent.**

**No. D–4558.**

Supreme Court of Texas.

Nov. 3, 1994.

Rehearing Overruled Dec. 22, 1994.

---

838

Rosemary L. Hollan, Peter L. Kilpatrick, San Antonio, Robert D. Daniel, Michael D. Weiss, Houston, for relator.

Richard Frankel, Houston, Roger W. Hugher, James H. Denison, Harlingen, Richard B. Miller, Houston, Steven Goode, Austin, James DeAnda, Houston, for respondent.

GONZALEZ, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, HIGHTOWER, HECHT, CORNYN, GAMMAGE and SPECTOR, Justices, join.

In this original proceeding we consider the scope of the litigation exceptions to the physician-patient and mental health information

privileges. Tex.R.Civ.Evid. 509(d)(4), 510(d)(5). Relator, R.K., is a physician and a defendant in the underlying medical malpractice suit. R.K. contends that the trial court abused its discretion by ordering him to disclose certain medical and mental health records to the plaintiffs, Heriberto and Maria Cadena, despite his assertion of the privileges in Texas Rules of Civil Evidence 509 [1] and 510.[2]

Some information in the records that Judge Ramirez ordered R.K. to disclose is privileged and is not within the exceptions to the physician-patient and mental health information privileges. Therefore, we conditionally grant the writ and direct Judge Ramirez to vacate his order of December 2, 1993, and perform another *in camera* review of R.K.'s records in light of the standards set out below. *See Walker v. Packer*, 827 S.W.2d 833, 843 (Tex.1992).

## I.

R.K. is one of five physicians who provided prenatal care for Mrs. Maria Cadena at the Family Medical Center–U.T., or at McAllen Methodist Hospital, between May and October of 1984. R.K. delivered Mrs. Cadena's twin sons in October, 1984. One son, Daniel, suffers from cerebral palsy, spastic quadriplegia, and mental retardation. The Cadenas filed suit against R.K., other treating

---

1. **Rule 509. Physician/Patient Privilege**
   ....
   **(b) General rule of privilege.**
   (1) Confidential communications between a physician and a patient, relative to or in connection with any professional services rendered by a physician to the patient are privileged and may not be disclosed.
   (2) Records of the identity, diagnosis, evaluation, or treatment of a patient by a physician that are created or maintained by a physician are confidential and privileged and may not be disclosed.
   ....
   **(d) Exceptions.** Exceptions to confidentiality or privilege in court or administrative proceedings exist:

   .  .  .  .  .
   (4) as to a communication or record relevant to an issue of the physical, mental or emotional condition of a patient in any proceeding in which any party relies upon the condition as a part of the party's claim or defense....

2. **Rule 510. Confidentiality of Mental Health Information**
   ....
   **(b) General rule of privilege.**
   (1) Communication between a patient and a professional is confidential and shall not be disclosed.
   (2) Records of the identity, diagnosis, evaluation, or treatment of a patient which are created or maintained by a professional are confidential and shall not be disclosed.
   ....
   **(d) Exceptions.** Exceptions to the privilege in court proceedings exist:

   .  .  .  .  .
   (5) as to a communication or record relevant to an issue of the physical, mental or emotional condition of a patient in any proceeding in which any party relies upon the condition as a part of the party's claim or defense....

physicians, the Family Medical Center, and McAllen Methodist Hospital. They allege that these individuals and entities are responsible for Daniel's condition. Specifically, the Cadenas claim that Daniel suffered asphyxia, a shortage of oxygen, during delivery. According to the pleadings, this condition would not have occurred if the physicians had resuscitated the twin immediately after birth and correctly interpreted the results of ultrasound examinations in June and October of 1984. The Cadenas assert that the physicians performing both ultrasound exams concluded that Mrs. Cadena was carrying one child, not two. The Cadenas further claim that the Family Medical Center and McAllen Methodist Hospital were negligent in selecting, training, and supervising R.K.

In preparation for the trial, the Cadenas sought discovery of records concerning R.K.'s treatment during 1985 for a medical, mental, or emotional condition. At this stage, the Cadenas' pleadings included only general allegations of negligence. R.K. moved for a protective order, asserting the physician-patient and mental health information privileges. Following an *in camera* inspection, the trial court denied the motion. Judge Ramirez ordered R.K. to turn over all documents to the Cadenas, and ordered him to sign a release authorizing the Cadenas' attorney to obtain any other records or information about R.K. in the possession of his physician, a clinic, and a hospital. R.K. sought mandamus relief. The court of appeals granted the writ and ruled that the trial court abused its discretion by breaching R.K.'s privileges. *R.K. v. Ramirez*, 855 S.W.2d 204, 207 (Tex.App.—Corpus Christi 1993, orig. proceeding). It stated:

> A party who alleges that the impaired condition of a defendant caused harm has a right to discover information about that defendant's mental or physical condition. The party relying on the exception [to Rules 509 and 510], however, must show that its claim or defense is at least partly predicated on the patient's physical, emotional, or mental condition.

*Id.* The court of appeals held that the pleadings did not support the conclusion that the Cadenas had placed R.K.'s medical condition in issue. "A general allegation of negligence does not bring into issue the medical condition of [R.K.]. Without pleadings to indicate that [R.K.'s] condition was a basis of the claim, there was nothing before the trial court to support its ruling." *Id.* (citation omitted).

The Cadenas amended their petition to specifically allege that (1) R.K.'s medical and emotional problems affected his ability to care for Mrs. Cadena, and (2) the clinic and hospital's selection of such an "unfit and incompetent" person proximately caused the Cadenas' damages.[3] R.K. reasserted the privileges, and the trial court again ordered the records produced. R.K. then sought writ of mandamus from this Court.

## II.

■ Neither the physician-patient privilege nor the mental health privilege existed at common law. *Ginsberg v. Fifth Court of*

---

3. Although the Cadenas had previously claimed negligent selection, training, and supervision by the clinic and hospital, their Fifth Amended Original Petition specifically alleges:

> [T]he clinic and the hospital were negligent in their selection, training and supervision of the resident trainees who cared for Mrs. Cadena and knew or should have known that [R.K.] was unfit and incompetent to care for Mrs. Cadena. Specifically, Family Medical Center and McAllen Methodist Hospital knew or should have known, during the period [R.K.] treated Mrs. Cadena that:
> (1) Dr. [R.K.] had serious mental and psychiatric problems, including severe depression;
> (2) Dr. [R.K.] had a history of and continuing problems of drug usage which affected his ability to function as a medical doctor;
> (3) Dr. [R.K.] was not mentally, emotionally or physically competent to perform the functions of an unsupervised attending physician and as a consequence had repeatedly failed his national medical examination; and
> (4) Dr. [R.K.] had a history of criminal behavior and was not fit morally and emotionally to care for Mrs. Cadena or her children. These mental, physical and character problems adversely affected Dr. [R.K.]'s medical judgment and his ability to care for Mrs. Cadena. The investigation performed by the hospital and/or clinic on Dr. [R.K.] was totally inadequate. In permitting such an unfit and incompetent person to care for Mrs. Cadena, the clinic and the hospital proximately caused the damages sustained by plaintiffs.

*Appeals,* 686 S.W.2d 105, 107 (Tex.1985). However, every state has adopted one or both of these privileges in some form.[4] Federal courts apply these state laws of privilege when applicable. *See* FED.R.EVID. 501. The basis for the privileges is twofold: (1) to encourage the full communication necessary for effective treatment, *Ginsberg,* 686 S.W.2d at 107, and (2) to prevent unnecessary disclosure of highly personal information. *Ex Parte Abell,* 613 S.W.2d 255, 262 (Tex.1981). The latter purpose reflects an understandable desire to maintain privacy. We recognize that private medical and mental health records should not become a matter of public record or public knowledge solely because a person either seeks redress or defends in court. One commentator expresses this idea as follows:

> [T]he privacy of the physician-patient relationship should not be subject to casual breach by every litigant in single-minded pursuit of the last scrap of evidence which may marginally contribute to victory in litigation.

CHARLES T. MCMORMICK, MCCORMICK ON EVIDENCE § 105, at 391 (John W. Strong et al. eds., 4th ed. 1992).

■■■ On the other hand, the physician-patient and mental health information privileges are not absolute. A number of exceptions, most commonly the patient-litigant exception, limit their scope. *See* Kendrick, *supra* note 4, § 7.23. Additionally, a party may not assert one of the privileges in order to withhold "evidence which would materially weaken or defeat" the asserting party's

claims. *Ginsberg,* 686 S.W.2d at 107. We refer to such a prohibited application of the privileges as an "offensive use." We extended application of the offensive use doctrine to the attorney-client privilege in *Republic Ins. Co. v. Davis,* 856 S.W.2d 158 (Tex.1993).

In 1983, this Court adopted the Texas Rules of Evidence for civil proceedings, in which we recognized the physician-patient and mental health privileges for the first time.[5] *See* TEX.R.EVID. 509, 510, 641–42 S.W.2d (Tex.Cases) XLVI–L (1983) (effective Sept. 1, 1983) (amended in 1988 and retitled TEX.R.CIV.EVID.). As originally adopted, the patient-litigant exception applied only when the patient made a claim for money damages based upon a physical or mental condition. In this kind of case, neither the patient nor the medical practitioner could assert a privilege to prevent disclosure of medical records. In 1984, we expanded the patient-litigant exception to the mental health information privilege as follows:

> Exceptions to the privilege in court proceedings exist ... as to a communication or record relevant to an issue of the physical, mental or emotional condition of a patient in any proceeding in which *he relies* upon the condition *as an element of his claim or defense....*

TEX.R.EVID. 510(d)(5), 669–70 S.W.2d (Tex. Cases) XXXVI (1984) (emphasis added). In 1988, we again amended the exception to the mental health information privilege, along with the patient-litigant exception to the physician-patient privilege. The amended rule stated:

---

4. Martha M. Kendrick et al., *The Physician-Patient, Psychotherapist-Patient, and Related Privileges, in* 2 TESTIMONIAL PRIVILEGES § 7.01, at 7–3 & n. 3 (Scott N. Stone & Robert K. Taylor eds., 2d ed. 1993).

5. Two years before we adopted the Texas Rules of Evidence, the Legislature established a statutory physician—patient privilege in the Medical Practice Act. Act of Aug. 5, 1981, 67th Leg., 1st C.S., ch. 1, 1981 Tex.Gen.Laws 1, 31–34 (codified as amended at TEX.REV.CIV.STAT. art. 4495b, § 5.08). Even earlier, the Legislature created a mental health information privilege in the Health and Safety Code. Act of May 17, 1979, 66th Leg., R.S., ch. 239, 1979 Tex.Gen.Laws 512 (former TEX.REV.CIV.STAT. art. 5561h; now codified as amended at TEX.HEALTH & SAFETY CODE §§ 611.001–

611.005). However, these statutes are "deemed to be repealed insofar as they relate to civil actions by [Section 22.004(c) of the Government Code]." 641–42 S.W.2d (Tex. Cases) LXVIII (1983); Act of June 12, 1985, 69th Leg., R.S., ch. 480, §§ 1, 26, 27, 1985 Tex.Gen.Laws 1720, 1724, 2048–49 (codified at TEX.GOV'T CODE § 22.004(c)). According to the comments of the Rule 509 and 510 drafters:

> Th[e] rule[s] [of evidence] only gover[n] disclosures of patient ... communications in judicial or administrative proceedings. Whether a [physician or professional] may or must disclose such communications in other circumstances is governed by [the respective statutory privilege].

TEX.R.CIV.EVID. 509 cmt., 510 cmt.

Exceptions ... exist ... as to a communication or record relevant to an issue of the physical, mental or emotional condition of a patient in any proceeding in which *any party relies* upon the condition *as a part of the party's claim or defense.*

TEX.R.CIV.EVID. 509(d)(4), 510(d)(5) (emphasis added). The amendments eliminated the distinction between living and deceased patients, deleted the requirement that the patient be the party who puts his condition in issue, and replaced the word "element" of a claim or defense with the word "part" of a claim or defense. This case turns on our interpretation of the 1988 amendments.

## III.

R.K. makes three arguments to this court: (1) that we intended the 1988 amendments solely to codify the "offensive use" doctrine of *Ginsberg* (that the exceptions to the privileges apply only when a patient-party brings his own mental state into issue as part of the patient-party's claim or defense, *Ginsberg,* 686 S.W.2d at 107); (2) that the language "relies upon ... as part of the party's claim or defense" continues to mean that the patient's condition must be an element of the claim or defense; and (3) that the patient-litigant exception to the physician-patient and mental health information privileges violates his right to privacy under the Texas and Federal Constitutions. We disagree with these contentions.

R.K. first argues that we intended the 1988 amendments to Rules 509(d)(4) and 510(d)(5) solely to codify the offensive use doctrine of *Ginsberg.* Several courts of appeals have reached this same conclusion. *E.g., K.P. v. Packer,* 826 S.W.2d 664, 666–67 (Tex.App.—Dallas 1992, orig. proceeding); *Dossey v. Salazar,* 808 S.W.2d 146, 147–48 (Tex.App.—Houston [14th Dist.] 1991, orig. proceeding); *Scheffey v. Chambers,* 790 S.W.2d 879, 881 (Tex.App.—Houston [14th Dist.] 1990, orig. proceeding).

Other courts of appeals have rejected this interpretation, ruling that it fails to give effect to the changes in the wording of the privilege exceptions. *E.g., Gustafson v. Chambers,* 871 S.W.2d 938, 945 (Tex.App.— Houston [1st Dist.] 1994, orig. proceeding); *R.K.,* 855 S.W.2d at 206–07; *S.A.B. v. Schattman,* 838 S.W.2d 290, 294–95 (Tex.App.— Fort Worth 1992, orig. proceeding); *Kentucky Fried Chicken Nat'l Management Co. v. Tennant,* 782 S.W.2d 318, 320 (Tex.App.— Houston [1st Dist.] 1989, orig. proceeding). Finally, one court of appeals has held that the patient-litigant exception in Rules 509 and 510 and the offensive use doctrine are independent and unrelated. *Midkiff v. Shaver,* 788 S.W.2d 399, 402–03 (Tex.App.—Amarillo 1990, orig. proceeding) (analyzing separately Rules 509(d)(4), 510(d)(5), and the offensive use doctrine). In *Midkiff,* the court permitted discovery of medical and mental health records pursuant to the offensive use doctrine, even though it found the patient-litigant exception to the privilege rules did not apply. *Id.* We agree with the *Midkiff* court that the offensive use doctrine is independent from and unrelated to the privilege exception for patient-litigants stated in Rules 509(d)(4) and 510(d)(5). *See Republic,* 856 S.W.2d at 161 n. 5. We disapprove of those cases holding otherwise.

The language and history of the 1988 rule amendments indicate that there is no relation to the offensive use rule stated in *Ginsberg,* 686 S.W.2d at 107. In fact, the court in *Ginsberg* could not have allowed the discovery it did under the patient-litigant exception in Rules 509(d)(4) and 510(d)(5).

If the sole purpose of the 1988 amendments was to prevent offensive use of the privilege, then one of the reasons given for the amendments would be defeated. The history of the amendments indicates that executors in probate proceedings used the privileges in Rules 509 and 510 as a shield to defeat will contests based on the testator's lack of testamentary capacity.[6] Executors,

---

**6.** *See* 1984–85 STATE BAR COMMITTEE ON THE ADMINISTRATION OF RULES OF EVIDENCE IN CIVIL CASES RECOMMENDATIONS TO THE SUPREME COURT OF TEXAS, at 1–4 (May 1, 1985). When we were considering the 1988 amendments, the Advisory Committee noted that the changes "will no longer allow the

personal representative of an estate to claim the privilege on behalf of the testator where the testator's capacity is at issue." PROPOSED AMENDMENTS TO TEXAS RULES OF EVIDENCE, APPROVED OR REJECTED BY SUPREME COURT ADVISORY COMMITTEE AT MAY 31, 1985 MEETING, at 1 (1985).

who may have benefitted from the probate of wills written by incompetent testators, would invoke the privileges to prevent disclosure of evidence about the testator's physical and mental condition. The executor in a will contest is primarily in a defensive posture; therefore, the *Ginsberg* bar on offensive use of privileges would not prevent an executor from asserting one of the privileges. However, the patient-litigant exception in Rules 509 and 510 provides that medical and mental health records are not privileged when "any party" raises an issue of the patient's physical, mental, or emotional condition. TEX. R.CIV.EVID. 509(d)(4), 510(d)(5). The effect of Rules 509 and 510 was to eliminate the executor's defensive privileges when a will contestant put the testator's condition in issue. We conclude that the 1988 amendments did not codify or alter *Ginsberg*.

R.K. correctly points out that the 1988 amendments represent a significant departure from the historical scope of the patient-litigant exception. The exception now terminates the privileges whenever any party relies upon the condition of the patient as a part of the party's claim or defense, even though the patient has not personally placed the condition at issue, and even though the patient is not a party to the litigation. Thus on their face, the 1988 amendments abrogate much of the control that patients once exercised over the release of privileged information.

■ R.K. next argues that the records are privileged unless his mental or emotional condition is an "element" of a party's claim or defense. The 1988 amendments to the exceptions replace the language "element of his claim or defense" with the language "a part of the party's claims or defense." We should not interpret a rule in such a way that renders its language meaningless. Thus, we do not interpret the new word "part" to have the same meaning as the deleted word "element." Although any meaningful distinction between these words may be more a matter of metaphysics than of law, we must determine what this language means and thereby

whether R.K.'s mental or emotional condition is a "part" of any party's claim or defense.

One interpretation is that a condition is a "part" of a claim or defense if the records are relevant. Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. TEX.R.CIV.EVID. 401. But relevance alone cannot be the test, because such a test would ignore the fundamental purpose of evidentiary privileges, which is to preclude discovery and admission of relevant evidence under prescribed circumstances. *See* CHARLES T. MCCORMICK, MCMORMICK ON EVIDENCE §§ 72–72.1, at 268–72 (John W. Strong et al. eds., 4th ed. 1992).

Another interpretation might focus on the relevance of the condition itself to any party's claim or defense. However, just because a condition may be "relevant" to a claim or defense does not mean a party *"relies upon* the condition as a *part* of the party's claim or defense." Because relevance is defined so broadly, virtually any litigant could plead some claim or defense to which a patient's condition could arguably be relevant and the privilege would cease to exist. We reject this alternative as well.

■ A third alternative is that the patient-litigant exception to the privileges applies when a party's condition relates in a significant way to a party's claim or defense. Communications and records should not be subject to discovery if the patient's condition is merely an evidentiary or intermediate issue of fact, rather than an "ultimate" issue for a claim or defense, or if the condition is merely tangential to a claim rather than "central" to it. The scope of the exception should be tied in a meaningful way to the legal consequences of the claim or defense. This is accomplished, we believe, by requiring that the patient's condition, to be a "part" of a claim or defense, must itself be a fact to which the substantive law assigns significance. For example, an allegation that a testator is incompetent is an allegation of a mental "condition," and incompetence, if

found, is a factual determination to which legal consequences attach: the testator's will is no longer valid. This approach is consistent with the language of the patient-litigant exception, TEX.R.CIV.EVID. 509(d)(4), 510(d)(5), because a party cannot truly be said to "rely" upon a patient's condition, as a legal matter, unless some consequence flows from the existence or non-existence of the condition. As a general rule, a mental condition will be a "part" of a claim or defense if the pleadings [7] indicate that the jury must make a factual determination concerning the condition itself. In other words, information communicated to a doctor or psychotherapist may be relevant to the merits of an action, but in order to fall within the litigation exception to the privilege, the condition itself must be of legal consequence to a party's claim or defense.

■ Even if the trial court is convinced that this first step is satisfied, when reviewing documents submitted *in camera*, the court must ensure that the production of documents ordered, if any, is no broader than necessary, considering the competing interests at stake. The scope of the exception only permits discovery of records "relevant to an issue of the ... condition of a patient." TEX.R.CIV.EVID. 509(d)(4), 510(d)(5). Therefore, even if a condition is "part" of a party's claim or defense, patient records should be revealed only to the extent necessary to provide relevant evidence relating to the condition alleged. Thus courts reviewing claims of privilege and inspecting records *in camera* should be sure that the request for records and the records disclosed are closely related in time and scope to the claims made, *see Mutter v. Wood*, 744 S.W.2d 600, 601 (Tex.1988), so as to avoid any unnecessary incursion into private affairs. Even when a document includes some information meeting this standard, any information not meeting this standard remains privileged and must be redacted or otherwise protected.

This approach has several advantages. Most importantly, some protection of a patient's privacy interest will remain under this test. Although the 1988 amendments substantially broaden the litigation exception, this test prevents the privilege from evaporating as a matter of course simply because a lawsuit has been filed. Rather, access to medical and mental health information will be afforded the non-patient-party only if the patient's condition itself is a fact that carries legal significance and only to the extent necessary to satisfy the discovery needs of the requesting party.

■ We reject R.K.'s argument that discovery of his medical and mental health records violates his constitutional right of privacy. The patient-litigant exceptions in Rules 509 and 510, as we have interpreted them, are not unconstitutional. *See Whalen v. Roe*, 429 U.S. 589, 598–600, 604, 97 S.Ct. 869, 875–77, 878, 51 L.Ed.2d 64 (1977); *Caesar v. Mountanos*, 542 F.2d 1064, 1067 (9th Cir. 1976), *cert. denied*, 430 U.S. 954, 97 S.Ct. 1598, 51 L.Ed.2d 804 (1977).

To summarize, the exceptions to the medical and mental health privileges apply when (1) the records sought to be discovered are relevant to the condition at issue, and (2) the condition is relied upon as a part of a party's claim or defense, meaning that the condition itself is a fact that carries some legal significance. Both parts of the test must be met before the exception will apply. Even then, when requested, the trial court must perform an *in camera* inspection of the documents produced to assure that the proper balancing of interests, which we have described, occurs before production is ordered.

## IV.

■ The Cadenas have alleged that R.K.'s medical and mental condition caused or contributed to his alleged malpractice, and

---

7. Whether a condition is a part of a claim or defense should be determined on the face of the pleadings, without reference to the evidence that is allegedly privileged. Presumably, an *in camera* inspection could reveal that records are en-

tirely irrelevant or highly prejudicial. In either case, the nature of the evidence has no bearing on the issue of whether the patient's condition, if found, is a fact to which the law assigns significance.

that the hospital and the clinic knew or should have known of the condition and because of that condition should have supervised him better or not selected him at all. After reviewing the pleadings, we agree with the trial court that the information sought by the Cadenas is relevant to the condition of R.K. that is at issue, and that a jury determination that the condition exists is of legal significance to the Cadenas' negligence claims.

After examining the documents *in camera,* however, we conclude that the production ordered by the trial court is overly broad and that some of the information is not relevant to the condition at issue. Thus the Cadenas are entitled to discover some, but not all of the records produced under their blanket requests for all documentation related to R.K. We stress that the highly personal nature of this information places a heavy responsibility on the trial court to prevent any disclosure that is broader than necessary. *See Loftin v. Martin,* 776 S.W.2d 145, 148 (Tex.1989); *Ginsberg,* 686 S.W.2d at 107; *R.K.,* 855 S.W.2d at 207 ("General dredging by discovery in these private matters is forbidden."). Trial courts must use great care when permitting discovery of such sensitive information, and should redact or delete those portions of medical and mental health records that concern matters beyond the scope of the exception. Consistent with the standards set out in Texas Rules of Civil Procedure 76a and 166b(5), trial courts should use their authority to prevent the unwarranted invasion of personal, constitutional, or property rights.

Because the trial court ordered discovery of the records as a whole, we conditionally grant the writ of mandamus. Judge Ramirez is directed to vacate his order of December 2, 1993, and to review the records *in camera* in light of this opinion and release only those records that meet the test for the exceptions as set out above, redacting or exempting from release any information that does not meet the test. The writ of mandamus will

issue only in the unlikely event the trial court does not do so.

DOGGETT, J., joins in the Court's judgment only.

ENOCH, Justice, dissenting.

The claim against R.K. is that of medical negligence. The claim against Methodist Hospital is that of negligent entrustment, that is to say, the Hospital was negligent in permitting R.K. to be in a position to render the medical services at issue. On the state of these pleadings and requiring nothing more, the Court gives to the plaintiffs the keys to R.K.'s most personal and intimate physical and psychological history. Although carefully crafted, the Court's opinion simply renders the privilege established by rule 509 of the Texas Rules of Civil Evidence meaningless. I respectfully dissent.

I do not disagree with the Court's analysis of rule 509 in parts II and III of its opinion.[1] The rule clearly requires that the party seeking the medical records must be *"rely[ing]* upon the [medical] condition as a part of the party's claim...." TEX.R.CIV.EVID. 509(d) (emphasis added). And, I agree that to give meaning to rule 509, medical information is discoverable only if it concerns a condition that is "of legal consequence to a party's claim or defense." 887 S.W.2d at 842. I depart from the Court's opinion because the Court throws *reliance* away with merely a footnote asserting that "[w]hether a condition is a part of a claim or defense should be determined on the face of the pleadings...." 887 S.W.2d at 843. It studies not whether what is pleaded demonstrates *any reliance* upon R.K.'s condition. What the plaintiffs have pleaded, in fact, does not rely upon R.K.'s condition.

As the Court notes, R.K. was only one of several medical personnel who provided prenatal and birthing services to Mrs. Cadena. Regarding R.K., who was a resident medical school graduate under the supervision of a licensed physician, the Cadenas allege that during the prenatal examinations he, along with others, failed to diagnose that Mrs.

1. Also, I agree with the Court's disposition of R.K.'s claim of constitutional protection under part IV of the Court's opinion.

Cadena was carrying twins.[2] The Cadenas further allege that this failure fell below the standard of reasonable medical care.

As this Court states, a party "cannot truly be said to 'rely' upon a patient's condition as a legal matter, unless some consequence flows from the existence or non-existence of the condition." 887 S.W.2d 843. There is no question that R.K.'s liability is predicated on whether his *conduct* fell below that standard which a medical practitioner would have adhered to under the same or similar circumstances. *See Hood v. Phillips*, 554 S.W.2d 160, 165 (Tex.1977). What is of legal consequence is R.K.'s *conduct*. Yet, neither plaintiffs' pleadings nor this Court articulate how R.K.'s physical or mental *condition* relates to his conduct in this case. In short, in this negligence case, the legal consequence stems from *whether* R.K. was negligent, not *why* R.K. was negligent.

While I agree that *Dossey v. Salazar*, 808 S.W.2d 146 (Tex.App.—Houston [14th Dist.] 1991, orig. proceeding), incorrectly concludes that rule 509 only encompasses the "offensive use" doctrine regarding the waiver of patient/physician privileges, it is too hastily dismissed by the Court. 887 S.W.2d at 841. As in the present case, the court of appeals in *Dossey* was asked to determine whether the bare allegation that the defendant had a physical or mental impairment should open his treatment records to perusal by the plaintiffs. In *Dossey*, the defendant was involved in a car/motorcycle accident. Because the undisputed evidence showed that he had been drinking alcohol on the date of the accident, the plaintiffs asserted they had the right to review his psychiatric treatment records. In upholding the defendant's assertion of privilege, the court of appeals stated:

> ... the real parties in interest have not placed [defendant's] mental condition at issue by their ... allegation that 'evidence

of habitual intoxication' may be found in the records.

If a plaintiff could gain access to a defendant's mental health information *merely by making a claim regarding the condition*, patients would be deterred from ever seeking such emotional guidance, and this violates the very nature of psychological/psychiatric treatment which requires free and complete disclosure of all thoughts and feelings of the patient. (Citations omitted).

*Dossey* at 148 (emphasis added).[3]

In this case, the Cadenas merely assert that R.K. had a condition. Nothing in the record before this Court demonstrates that their claim of medical negligence against R.K. relies in any legal sense upon his condition.

Contrary to this Courts' paraphrase of and referencing to an out-of-context excerpt in plaintiffs' pleadings, the only place in the pleadings where R.K.'s mental and physical condition is even mentioned is with respect to what the hospital knew or should have known. Because the Court mischaracterizes plaintiffs' pleadings it misses a critical point. Under a negligent entrustment theory, the plaintiff must allege and prove that the actor who was entrusted was negligent. *Schneider v. Esperanza Transmission Co.*, 744 S.W.2d 595, 596 (Tex.1987); *Williams v. Steves Indus., Inc.*, 699 S.W.2d 570, 571 (Tex.1985). As discussed above, the plaintiffs' claim against R.K. does not, as a matter of legal consequence, rely upon his medical condition. Consequently, plaintiffs' negligent entrustment theory against the hospital, as regards R.K., cannot, as a matter of legal consequence, rely upon R.K.'s condition. This is so because, without articulating how R.K.'s condition relates to *conduct* which fell below the standard of reasonable medical care,

---

2. The record is unclear whether R.K. was attending Mrs. Cadena at the time of the birth. However, R.K. has not been sued for any action he took or failed to take at the time of the birth.

3. The Cadenas support their request for R.K.'s medical records by arguing that they are "developing evidence to prove (1) Dr. [K.'s] disabilities, unfitness, and incompetence ...; and (2) the knowledge of the hospital."

what the hospital knew or should have known about his medical condition is immaterial. *Schneider*, 744 S.W.2d at 596 (the essence of negligent entrustment is awareness by the entrustor of the propensity of the actor to commit the *act* upon which the negligence claim is based).

The Court errs in its treatment of rule 509. Because I do not agree that R.K.'s medical records are discoverable in this case, I would grant a writ of mandamus directing the trial court to vacate its order in its entirety. Therefore, I dissent.