In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-14-00090-CV
_____


IN THE INTEREST OF A.L., E.G., C.S., AND B.S.

_____

**On Appeal from the 163rd District Court**
**Orange County, Texas**
**Trial Cause No. B-120756-D**
_____

**MEMORANDUM OPINION**

In this parental-rights termination case, a jury found that Mother's parent-child relationships to her children, A.L., E.G., C.S., and B.S., should be terminated.[1] *See* Tex. Fam. Code Ann. §§ 161.001 (1)(D), (E), (O), (2), 161.003(a) (West 2014). The trial court's judgment terminates Mother's parent-child relationship to her four children.[2]

---

[1]We identify the minors by their initials to protect their identities. *See* Tex. R. App. P. 9.8. Other family members are identified, as necessary, based on their respective relationships to the specific child who is being discussed.

[2]The trial court also terminated the parental rights of the respective fathers of E.G., C.S., and B.S.; however, their respective fathers did not appeal.

1

In her appeal, Mother challenges the legal and factual sufficiency of the evidence supporting the trial court's best interest findings on her three youngest children, E.G., C.S., and B.S. Also, Mother complains that the trial court, over her objection, admitted a report and the testimony of a psychologist. We affirm the trial court's judgment.

In reviewing legal sufficiency complaints that relate to orders terminating a parent's rights, we review all the evidence admitted in the trial "in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). With respect to Mother's factual sufficiency argument, we "give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *Id*. Under a factual sufficiency standard, the findings the trial court made are sufficient unless, based on the entire record, the disputed evidence that could not have been credited in favor of the finding is so significant that the trial court could not have reasonably formed a firm belief or conviction that the finding at issue was true. *See id*.

Several factors apply to reviewing a court's decision to terminate a parent's relationship with a child. "[T]here is a strong presumption that the best interest of a child is served by keeping the child with a parent." *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). Nevertheless, a prompt and permanent placement of the child in a

2

safe environment is also presumed to be in the child's best interest. Tex. Fam. Code Ann. § 263.307(a) (West 2014). In reviewing the trial court's best interest findings, we consider:

(1) the child's desires;

(2) the child's emotional and physical needs now and in the future;

(3) any emotional and physical danger to the child now and in the future;

(4) the parental abilities of the parent that is seeking custody;

(5) the programs available to assist the parent who is seeking custody to promote the best interest of the child;

(6) the plans for the child by the parent or the agency that seeks custody;

(7) the stability of the home or the proposed placement;

(8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and,

(9) any excuse for the parent's acts or omissions.

*Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976); *see* Tex. Fam. Code Ann. § 263.307(b) (West 2014).

Mother contends the evidence fails to sufficiently establish that she is incapable of properly caring for the children or providing them a safe and appropriate home environment. A.L., E.G., and C.S. were removed from the home in August 2012. Mother tested positive for amphetamines and methamphetamines on the date of an adversary hearing; over the following sixteen months, Mother

3

was tested and failed seven drug tests. On twenty other occasions, Mother presented a diluted sample or refused to submit to testing. Mother denied that she took drugs, other than marijuana. To explain the positive tests, she claimed her boyfriend slipped drugs into her food. Mother insisted that the test results in evidence contain false results, although the test results were confirmed by hair follicle testing. Additionally, Mother failed another drug test during her pregnancy with B.S., who was born in August 2013. A few days after B.S. was born, B.S. was removed from Mother's care.

During the termination hearing, Mother's thirteen-year-old daughter, A.L., gave testimony that sheds insight into the family environment. A.L. explained that as a ten-year-old, she was usually responsible for feeding herself and her younger sister because Mother slept most of the day. She also explained that she went hungry at times when they did not have sufficient food for everyone. A.L. explained that if she disturbed her mother while she slept, Mother hit and punched her. According to A.L., Mother and her boyfriends fought, and, at times, they used physical force against her.

There was also other testimony reflecting that the children faced potential dangers while living in the environment that Mother provided. After taking temporary custody of the children, the Department placed E.G. and C.S. with

4

Grandmother.[3] Before E.G. and C.S. were removed, Mother, A.L., and E.G. lived with Grandmother while Mother was pregnant. Grandmother had these children because Mother's boyfriend had beaten her.

Other evidence admitted during the termination hearing shows that Mother exhibited erratic behavior and acted in a hostile manner when interacting with the Department's employees. During the hearing, Mother admitted that she had made threats to Department employees and to Grandmother. Mother also admitted that she was experiencing mental health issues, but she attributed her problems to being separated from her children. Mother testified that she had used profanity around her children. The testimony indicates that although Mother was referred to individual and anger management counseling through Family Services, she attended these sessions sporadically. However, there is evidence in the record showing that Mother completed a parenting class.

Additional evidence supporting the trial court's judgment consists of the testimony of a psychologist who examined Mother and performed a psychological evaluation on her. The psychologist characterized Mother as mentally ill and potentially dangerous; he stated that Mother was suffering from a "major depressive disorder, recurrent, severe with psychotic features." Although the

[3]Grandmother is married to A.L.'s grandfather; she explained at the trial that she is not biologically related to any of Mother's children.

5

psychologist stated that Mother had performed in the average range on intelligence and achievement tests, he also noted that Mother appeared to be very distraught and was unable to control herself emotionally. The psychologist expressed significant concern about the frequency of Mother's disputes with her boyfriends as well as concern regarding her disputes with Department employees. The psychologist expressed his opinion that Mother's children could be in danger because outbursts of anger "do not usually stop with one or two people." According to the psychologist, the violent nature of Mother's relationships potentially threatens the children.

The trial court's judgment finds additional support in testimony from a licensed professional counselor employed by Family Services of Southeast Texas. The counselor testified that she provided Mother with individual counseling, group anger management, and parenting classes. Mother saw the counselor in November 2012 when she had a psychosocial assessment, but then Mother failed to return until April 2013. According to the counselor, Mother was often confused, did not have a good grip on reality, believed the Department tampered with her drug tests, and said that her own mother's arrest for distributing methamphetamines was part of a plot by the Department to take her children away from her. The counselor explained that Mother told her that upon the Department's removal of B.S., Mother bit the case manager. The counselor testified that Mother admitted to her that she

6

had threatened Department employees with physical violence. The counselor indicated that Mother felt that her father, who had been released from prison, could assist her in carrying out her threats. The counselor expressed her opinion that Mother failed to take responsibility for her own actions, including her drug use. The record indicates that Mother missed bi-weekly counseling sessions with her counselor for six weeks at a time. In July 2013, Mother told the counselor that "she had completed her anger management, and she was done." The counselor's testimony as well as additional evidence shows that Mother self-terminated her anger management and domestic abuse counseling.

Mother also testified during the termination hearing. According to Mother, she planned to live with the children at her mother's home. Mother also addressed her prospects for earning a living. Although Mother stated that she had tried to find a job at a neighboring restaurant, Mother never presented any other evidence that she had any realistic prospect of employment. With respect to Mother's claim that she completed her classes, Mother did not produce a completion certificate for these courses.

With respect to Mother's plans, testimony reflects that a house that Mother indicated was appropriate for her children was deemed inappropriate by the Department because the house was used as a location for the distribution of methamphetamine. After the children were removed, this house was inspected by a

Department caseworker; the caseworker found that the windows to the home were completely blacked out, the coffee table was littered with cigarette butts and prescription bottles, dirty dishes filled the kitchen sink, and the rooms were cluttered and unsanitary. The caseworker attempted to visit the home on several other occasions; due to death threats that Mother made against Department employees, the caseworker did not go visit the home again. The caseworker concluded that, based upon Mother's lack of cooperation with the family service plan and her failure to maintain housing and an income, Mother would not be able to raise four children in a safe and appropriate environment.

Other evidence was introduced showing the Department's plan for the children. The evidence shows that the Department wanted Grandmother and her husband to adopt E.G., C.S., and B.S. Grandmother expressed a desire to adopt the children. Also, according to Grandmother, E.G. wants to live with her and is terrified of Mother.

When viewed in the light most favorable to the verdict, the jury's decision terminating Mother's rights is a decision supported by clear and convincing evidence. *See J.F.C.*, 96 S.W.3d at 266. There was testimony that E.G. did not want to live with Mother, and the evidence showed that C.S. and B.S. had been placed with Grandmother in foster care for most of their lives. A.L.'s testimony shows that Mother failed to adequately care for her, E.G., and C.S. As the

8

factfinder, the jury could have reasonably chosen to reject Mother's claim that she never used methamphetamines as a claim that was not credible. The jury was also entitled to accept the psychologist's opinion that Mother is mentally ill and could conclude that Mother presents a danger to her children. From the evidence, the jury could reasonably conclude that Mother was unable to provide a safe and stable home for her children, and decide that the placements of the children by the Department provided the children with more safety and security. The evidence before the jury, in our opinion, was sufficient to allow the jury to form a firm belief or conviction that the best interest of each child was served by a decision to terminate Mother's parental rights.

Although some of the evidence in the record does not support the jury's verdict, it was all evidence the jury could have reasonably given little weight or determined that it was not credible. *See id.* The jury could have chosen to reject Mother's explanations for her drug use, her claim that she could provide stable housing, and her claim that she would obtain a job providing an income sufficient to support her children. Because the evidence that weighs against the jury's findings is not so significant that the jury could not have reasonably formed a firm belief or conviction that termination was in the best interest of each child, the evidence, when viewed as a whole, provides legally and factually sufficient support for the jury's verdict. We overrule issue one.

9

In her second issue, Mother contends that the trial court erred by admitting the testimony and report of the psychologist who examined her. According to Mother, the testimony by the psychologist and the admission of the report violate Rule 510 of the Texas Rules of Evidence. Rule 510 provides that communications between a patient and a professional is confidential and shall not be disclosed in a civil case. *See* Tex. R. Evid. 510(b)(1).

In this case, the communications at issue occurred in a court-ordered evaluation that related to Mother's mental or emotional condition. The evidence shows that Mother was informed that her communications with the psychologist would not be privileged. *See* Tex. R. Evid. 510(d)(4). And, the evaluation of the psychologist was relevant; it shows how Mother's mental or emotional condition impacts her abilities to parent, and it shows how Mother's psychological condition affected and would continue to affect the safety and welfare of the children. *See R.K. v. Ramirez*, 887 S.W.2d 836, 843 (Tex. 1994) (the patient-litigant exception applies when the records are relevant to the condition at issue and the patient's mental or emotional condition carries legal significance to a party's claim or defense); *In re G.B.*, No. 07-01-0210-CV, 2003 WL 22327191, at **6-7 (Tex. App.—Amarillo Oct. 10, 2003, no pet.) (mem. op.); *see also* Tex. R. Evid. 510(d)(5). Because Mother's communications with the court-ordered psychologist

were not privileged, we overrule issue two. Having overruled both of Mother's issues, we affirm the trial court's judgment.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on May 12, 2014
Opinion Delivered June 26, 2014

Before Kreger, Horton, and Johnson, JJ.

11