TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00231-CV






In re Jane Doe






ORIGINAL PROCEEDING FROM TRAVIS COUNTY






 This discovery mandamus relates to a personal injury lawsuit filed by the relator
and plaintiff below, Jane Doe, (1) against the real parties in interest and defendants below,
Wackenhut Corrections Corporation and some of its employees. The issues involved are whether
the trial court abused its discretion by compelling Doe to submit to a mental examination, allowing
the discovery of Doe's mental health care providers and mental health records, and denying a
protective order that would limit the scope of questions during Doe's deposition. We will
conditionally grant the writ.


Background


 According to Doe's original petition and the uncontroverted statement of facts in
her petition for writ of mandamus, at the end of February 1999, Doe was sent to the Travis
County Community Justice Center, a state jail facility operated by Wackenhut. Doe alleged that
a few days after she arrived as an inmate she was raped by Nathaniel Jenkins, Jr., a guard
employed by Wackenhut. After receiving several reports of sexual misconduct by Wackenhut
employees, the state and county investigated activities at the jail. Ultimately, Wackenhut's
contract was terminated, and twelve Wackenhut employees were indicted for sexual assault. 
Jenkins, one of the twelve, was indicted for sexually assaulting Doe and two other women. 

 On October 20, 1999, Doe filed her original petition naming Jenkins, J.D.
Williams, Jenkins's supervising warden, Kenneth Williams, an assistant warden, and Wackenhut
as defendants. Doe claims that because of Wackenhut's negligence, she is entitled to recover
damages for past and future pain and mental anguish, plus punitive damages. The defendants
answered the lawsuit and Wackenhut submitted interrogatories and requests for production to Doe. 
Based upon her responses raising objections and privileges, Wackenhut filed two motions asking
the trial court to compel Doe (1) to submit to a mental examination and (2) to answer the written
discovery, listing her mental health care providers, and disclosing her mental health records. Doe
objected raising several complaints. In addition, Doe moved for a protective order seeking (1)
to prevent the defendants from inquiring about her mental health records and providers and (2)
to prevent the defendants from asking Doe at her deposition about her past and present "sexual
history." (2) The trial court held a hearing and on April 11 ordered Doe to submit to a mental
examination and to respond to the written discovery requests at issue. Additionally, in the April
11 order the trial court denied Doe's request for a protective order. 

 Doe filed this petition for mandamus, along with a motion to stay the trial court's
order pending consideration of the mandamus. We granted Doe's motion for stay of the April 11
order. We now address Doe's petition for writ of mandamus. 

 At issue in this mandamus proceeding is whether the trial court abused its discretion
by ordering Doe to submit to a mental examination that may not be recorded or attended by Doe's
counsel, and requiring Doe to answer certain interrogatories and requests for production and to
then provide copies of her mental health records to the defendants. The final issue is whether the
trial court abused its discretion by denying Doe's request for a protective order that would
prohibit the defendants from inquiring into her past and present sexual activity. 


Discussion


Standard of Review

 In discovery matters, mandamus is available to correct a clear abuse of discretion. 
See Walker v. Packer, 827 S.W.2d 833, 839 (Tex. 1992); Jampole v. Touchy, 673 S.W.2d 569,
572 (Tex. 1984, orig. proceeding). A trial court abuses its discretion when it reaches a decision
so arbitrary and unreasonable that it amounts to a clear and prejudicial error of law. Walker, 827
S.W.2d at 839. With respect to resolution of factual issues or matters committed to the trial
court's discretion, the reviewing court may not substitute its judgment for that of the trial court. 
See id. at 840 (citing Flores v. Fourth Court of Appeals, 777 S.W.2d 38, 41-42 (Tex. 1989)
(determination of discoverability under Texas Rule of Civil Procedure 166b(3)(d) was within trial
court's discretion); Johnson v. Fourth Court of Appeals, 700 S.W.2d 916, 918 (Tex. 1985) (trial
court was within discretion in granting new trial "in the interest of justice and fairness")). The
relator must establish that the trial court could reasonably have reached only one decision. 
Walker, 827 S.W.2d at 840 (citing Johnson, 700 S.W.2d at 917). Even if the reviewing court
would have decided the issue differently, it cannot disturb the trial court's decision unless it is
shown to be arbitrary and unreasonable. Johnson, 700 S.W.2d at 918.

 On the other hand, review of a trial court's determination of the legal principles
controlling its ruling is much less deferential. Walker, 827 S.W.2d at 840. A trial court has no
discretion in determining what the law is or in applying the law to the facts. Id. Thus, a clear
failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion
and may result in appellate reversal by extraordinary writ. Id. Mandamus will not issue when
there is an adequate remedy by appeal. Id. With this standard in mind, we will review each
component of the trial court's order for an abuse of discretion. 


Mental Examination

 Initially, we address whether the trial court abused its discretion in ordering Doe
to submit to a mental examination. A party may move for an order compelling another party to
submit to a mental examination by a qualified physician or psychologist. See Tex. R. Civ. P.
204.1(a). (3) Before a trial court may order a party to submit to a mental examination, the movant
must show (1) that the party's mental condition is in controversy and (2) that there is good cause
for a compulsory mental examination. See Coates v. Whittington, 758 S.W.2d 749, 751 (Tex.
1988); Tex. R. Civ. P. 204.1(c). Absent an affirmative showing of both prongs of the test, a trial
court may not order a mental examination. 

 Wackenhut contends that Doe's answers to interrogatories 5 and 6 placed her
mental condition in controversy and that good cause exists for the trial court to compel a mental
examination. Interrogatory 5 asked Doe, "If you contend that you have been injured or damaged,
describe the injuries and damages." Doe answered, 


I am scared of men who resemble Sgt. Jenkins and am not at ease with any men. 
I feel intimidated by anyone in a uniform. Whenever I hear a door slamming, it
scares me. I have trouble sleeping. I am jumpy and anxious when people touch
me. I have times when I feel scared and anxious and can feel it in my stomach.



Interrogatory 6 asked Doe, 



If you are seeking an award of any sum of money, whether by damages or
otherwise, state the full amount of money you seek and describe the manner in
which the amount was calculated. Your description should include each element
of damage or component of recovery that you seek, the amount sought for each
element or component, the manner in which each element or component of the
calculation was determined, and should identify the source of each number used
in the calculation. 



Doe answered, 



I should be awarded a significant amount of money to compensate me for my
mental anguish in the past and in the future. There is no way to calculate exactly
how much this should be, but it should be at least $4,000,000.00. Also, the
Defendants should be punished for their actions. I was told by my attorney that
Wackenhut was getting $12,000,000.00 per year for running the jail. That seems
like a fair price for them to pay.


 Coates v. Whittington is the controlling Texas Supreme Court authority in point on
this issue. 758 S.W.2d at 749. Mrs. Coates was injured when she inadvertently sprayed her arm
with the defendant's oven cleaning product while cleaning her stove. She suffered severe second
degree burns and permanent scarring on her left forearm as a result of the incident. Coates
brought a products liability action against the defendant, seeking damages for mental anguish. (4) 
The defendant moved to compel Coates to submit to a mental examination, claiming that her
mental anguish was pre-existing and that Coates had put her mental condition in controversy by
pleading mental anguish damages. Additionally, the defendant claimed that there was good cause
for the mental examination because Coates stated that she experienced "depression and general
mental problems at the time she used the oven cleaner." Id. at 750. The trial court ordered
Coates to submit to a mental examination by a court-appointed psychologist. On mandamus, the
supreme court reviewed whether the defendant had shown both prongs of the test to compel a
mental examination. 

 The Coates court warned that "sweeping examinations of a party who has not
affirmatively put his mental condition in issue may not be routinely ordered simply because the
party brings a personal injury action." See id. at 751 (citing Schlagenhauf v. Holder, 379 U.S.
104, 121 (1964)). A mental injury that warrants psychological evaluation is distinguishable from
emotional distress that accompanies a personal injury action. Id. The two prongs of the test are
not met "by mere conclusory allegations of the pleadings--nor by mere relevance to the case." Id.
(quoting Schlagenhauf, 379 U.S. at 118) (emphasis added). The defendant attempted to meet the
"in controversy" requirement by contending that Coates' prior problems affected her mental state
at the time she used the oven cleaner and that as a result good cause existed for compelling a
mental examination. Id. 

 In evaluating whether Coates' mental condition was in controversy, the court noted
that Coates asserted 


she has suffered the type of emotional distress that typically accompanies a second
degree burn and permanent scarring. . . . [S]he described her mental anguish as
feelings of embarrassment and self-consciousness because the scar is ugly and
noticeable in public. She is not alleging a permanent mental injury nor any deep
seated emotional disturbance or psychiatric problem. Mrs. Coates' mental anguish
claim is, therefore, for the emotional pain, torment, and suffering that a plaintiff
who has been burned and scarred would experience in all reasonable probability.
. . . Further, the record reflects that Mrs. Coates has not sought any type of
psychiatric treatment as a result of the incident and, equally important, does not
propose to offer psychiatric or psychological testimony to prove her mental anguish
at trial. 



Id. at 752 (emphasis added). The Coates court held "Mrs. Coates' prior problems are clearly
peripheral to the issues in this case, and, consequently, they are not 'in controversy.'" Id.
(emphasis added). Her prior problems and complaints of depression "are distinct from the mental
anguish she claims as a result of her injury." Id. Noting that a tortfeasor takes a plaintiff as he
finds her, "[r]egardless of Coates' personal problems at the time of the incident with the oven
cleaner, she is entitled to recover the damages resulting from the incident conditioned as [she] was
at the time of the injury." Id. at 753 (quoting Driess v. Friederick, 11 S.W. 493, 494 (Tex.
1889)) (emphasis added). 

 The good cause and in controversy requirements are necessarily related. Id. A
court may compel a plaintiff to submit to a mental examination only if the plaintiff asserts a
mental injury that exceeds the common emotional reaction to an injury or loss. Id. at 753. The
requirement of good cause for a compulsory mental examination may be satisfied only when the
movant satisfies three elements. First, the examination must be relevant to issues that are
genuinely in controversy in the case and it must be shown that the examination will produce, or
is likely to lead to, relevant evidence. Id. Second, a party must show a reasonable nexus between
the condition in controversy and the examination sought. Id. Finally, a movant must demonstrate
that it is not possible to obtain the desired information through means that are less intrusive than
a compelled examination. Id. The Coates court determined that the defendant had not shown that
the information it sought could not be obtained by other discovery techniques. The Coates court
also noted that if, however, Coates intended to use expert medical testimony to prove her alleged
mental condition, then her condition might be placed in controversy, and the defendant would be
able to attempt to show good cause for an examination. 

 The Coates court ultimately held that the trial court abused its discretion in ordering
Coates to submit to a mental examination and conditionally granted Coates' petition for writ of
mandamus. 

 In this case, exactly as in Coates, the defendants want Doe to submit to a
compulsory mental examination because they contend she has put her mental condition in issue
by claiming she is entitled to past and future mental anguish due to a traumatic event caused by
the defendants--a severe burn in Coates, a sexual assault in this case. With the lessons of Coates
in mind, we consider the situation before us. 

 Wackenhut argued to the trial court that it was entitled to a mental examination of
Doe (1) because "[Doe's] own allegations demonstrate that both prongs of the Rule 204.1 test are
met in this case"; and (2) because of Doe's "extreme emotional health damage allegations."
Wackenhut contends that Doe has "placed her emotional condition 'in controversy' [because] .
. . Doe seeks damages for extreme depression and claims to need additional intensive mental
health treatment" and that her "mental health damage claims also exceed the common emotional
reaction for the type of injury in which she sues." Wackenhut argued to the trial court that good
cause existed for a mental examination because (a) it will help determine whether Doe's "mental
injuries are truly so severe that she is no longer able to function normally in today's society"; (b)
a reasonable nexus exists between Doe's alleged emotional injuries and the mental examination
sought "since the very nature of a mental health examination is to help determine the impact, if
any, of the incident in question"; and (c) there is no possibility of obtaining the information
through less intrusive means since Doe "has not undergone a thorough mental health examination
focusing on the alleged sexual assault and the alleged impact on her overall well-being." 

 First, Wackenhut misstates Doe's pleadings and misinterprets her answers to
interrogatories 5 and 6. Nothing in the record presented shows that Doe is seeking damages for
"extreme depression" or has claimed a need for "additional intensive mental health treatment" as
Wackenhut asserts. Doe has not claimed or stated in her pleadings or the discovery we have
reviewed that she can no longer function normally in society as asserted by Wackenhut. Nor has
Doe claimed that her mental anguish damage claim exceeds the common emotional reaction for
a sexual assault. Doe's mental anguish claim and her answers to the interrogatories are consistent
with the common emotional reaction to a sexual assault. As in Coates, Doe "is not alleging a
permanent mental injury nor any deep seated emotional disturbance or psychiatric problem." See
Coates, 758 S.W.2d at 752. Doe has not designated any psychiatrist or psychologist as an expert
witness. Finally, the Coates court held that the movant must show that the requested examination
will produce, or is likely to lead to, evidence of relevance in the case. Id. at 753. Here,
Wackenhut argues only that a mental examination might show that Doe's anguish is due to her
being incarcerated on a drug charge or that it might reveal that she has made false charges of
sexual assault in the past. 

 In other cases, courts have declined to issue mandamus to prevent compulsory
mental examinations. In Exxon Corporation v. Starr, unlike the case before us, the plaintiff's
claim for damages was supported by a "life care plan" prepared by a psychologist, which
projected continuous psychiatric, psychological and neuropsychological treatment. 790 S.W.2d
883 (Tex. App.--Tyler 1990, orig. proceeding). The plaintiff further indicated that he would
include as evidence at trial testimony by psychiatric and psychological experts. Id. In Sherwood
Land Associates v. O'Neill, the minor plaintiff, who had been sexually assaulted, required
hospitalization during the pendency of the lawsuit and sought damages for the cost of
hospitalization. 782 S.W.2d 942 (Tex. App.--Houston [1st Dist.] 1990, orig. proceeding). Doe
makes no such claims. Also, in Sherwood, unlike the case before us, the plaintiff designated
expert witnesses who would testify about her medical and psychological condition. Id. 

 Given the state of the record as it currently exists, Doe has not stated in any manner
that she has suffered a permanent mental injury or condition as a result of the sexual assault, nor
has she placed her mental condition in controversy. Her responses to the interrogatories indicate
reactions that seem very typical of what any woman placed in a jail cell and then sexually
assaulted would feel. Her statements about how she feels are no different in kind than those of
Mrs. Coates. She has not designated a psychiatrist or psychologist as an expert witness. 
Reviewing this case using the standard set out in Walker v. Packer, we hold that at this early stage
of the litigation the trial court abused its discretion in ordering Doe to submit to a mental
examination. (5) We sustain Doe's first issue.


Mental Health Records

 Next, we address whether the trial court abused its discretion in ordering Doe to
reveal to Wackenhut the names of her mental health care providers and release her mental health
records. Communications between a patient and a physician or professional are confidential and
shall not be disclosed in civil cases. See Tex. R. Evid. 509(c)(1), 510(b)(1). Records of the
identity, diagnosis, evaluation, or treatment of a patient which are created or maintained by a
physician or professional are confidential and shall not be disclosed in civil cases. See Tex. R.
Evid. 509(c)(2), 510(b)(2). 

 Wackenhut contends that Doe's mental health care providers and the related records
are discoverable under the litigation exceptions to the Texas Rules of Evidence because Doe's
mental condition is part of a claim or defense. See Tex. R. Evid. 509(e)(4), 510(d)(5).
Additionally, Wackenhut contends that Doe's mental health records are discoverable under the
offensive use exception to the mental health records privilege. See Ginsberg v. Fifth Court of
Appeals, 686 S.W.2d 105, 107 (Tex. 1985). Wackenhut contends that based on the pleadings and
Doe's responses to interrogatories and several requests for production, the trial court did not
abuse its discretion in compelling Doe to reveal her mental health care providers and records. We
will review the relevant requests, interrogatories and Doe's responses. Request for production
14 asked Doe to provide,


Any and all medical records including prescriptions or similar documents related
to any injuries or damages that you claim to have sustained because of the incidents
made the basis of this lawsuit.



Doe responded,



Plaintiff objects to this request because it could lead to the discovery of mental
health records, which are privileged. Furthermore, Plaintiff is not seeking
damages for medical expenses. 



Request for production 20 asked Doe,



Defendant requests that you sign the enclosed authorizations to obtain your prior
medical and employment records.



Doe responded,



[Plaintiff] will not sign the enclosed Authorization because it could lead to the
discovery of privileged matter such as juvenile records, medical records more than
five years prior to the incident in question and mental health records. Plaintiff
objects to the authorization for employment records because she is not seeking
damages for loss of income.



Interrogatory 9 asked Doe, 



Identify all physicians, therapists, counselors, psychiatrists, psychologists or other
persons with whom you have sought treatment or counseling in the past five (5)
years, and with respect to each identify the person named, their business address,
the date(s) of treatments(s), and reason for treatment.



Doe responded,



None, in the five years prior to my being raped. I object to revealing anything
about persons that I may have seen since the rape because it could lead to revealing
mental health records, which are privileged. 



Interrogatory 16 asked Doe,



If you have suffered any physical or emotional injuries arising out of the incidents
complained of in this lawsuit or otherwise, please state the nature and effect of the
injuries suffered, the name, address and telephone number of any mental health
professional or counselor who has examined you, and the diagnosis, if any, of such
health care provider. Additionally, for each condition:


a. state when, where, in general, you were injured and describe the injuries
suffered; and 


b. state when you were ill and describe, in general, the illness.


Doe responded, 



I object to answering questions as to who I may have seen since the rape because
it would lead to discovery of mental health records, which are privileged. I
suffered emotional injuries, which I have told about in interrogatory number 5,
above.



Litigation Exception to Confidentiality of Mental Health Information

 An exception to the general rule that mental health information is confidential exists
when a "communication or record relevant to an issue of the physical, mental or emotional
condition of a patient in any proceeding in which any party relies upon the condition as a part of
the party's claim or defense." Tex. R. Evid. 509(e)(4), 510(d)(5). 

 In R.K. v. Ramirez, the supreme court extensively reviewed the litigation exception
to the general rule that mental health records are privileged. 887 S.W.2d 836 (Tex. 1994). The
R.K. court held that 


[a]s a general rule, a mental condition will be a part of a claim or defense if the
pleadings indicate that the jury must make a factual determination concerning the
condition itself. In other words, information communicated to a doctor or
psychotherapist may be relevant to the merits of an action, but in order to fall
within the litigation exception to the privilege, the condition itself must be of legal
consequence to a party's claim or defense.



Id. at 843. The R.K. court noted that whether a condition is a part of a claim or defense should
be determined on the face of the pleadings, without reference to the evidence that is allegedly
privileged. Id. at 843 n.7. "Presumably an in camera inspection could reveal that records are
entirely irrelevant or highly prejudicial." Id. 

 In R.K., the plaintiffs specifically alleged in their fifth amended petition that the
hospital and clinic knew or should have known during the period R.K., a physician, was treating
a plaintiff that R.K. had serious mental and psychiatric problems including severe depression; had
a history of and continuing problems of drug usage which affected his ability to function as a
medical doctor; was not mentally, emotionally or physically competent to perform the functions
of an unsupervised attending physician; and had a history of criminal behavior and was not
morally fit to care for the plaintiff. Id. at 839 n.3. The petition alleged that these mental,
physical and character problems adversely affected R.K.'s medical judgment and his ability to care
for one of the plaintiffs. After reviewing the pleadings, the R.K. court agreed with the trial court
that the information sought was relevant to R.K.'s condition that was at issue and that a jury
determination that the mental condition existed was of legal significance to the plaintiff's
negligence claim. Id. at 844. 

 In this case, Doe alleged in her petition that "as a direct and proximate result of
the conduct of defendants, [she] has suffered pain and mental anguish in the past and will continue
to suffer same in the future." Similar to its argument about why the trial court should order a
mental examination, Wackenhut urges Doe's mental condition is part of a claim or defense
because Doe is claiming mental anguish damages and stated she is scared of men who resemble
Jenkins, feels uneasy around men, is jumpy and anxious when people touch her, and has trouble
sleeping, therefore making her mental health a part of her claim. Wackenhut argues that without
Doe's mental health records the jury will be left with the faulty impression that Doe was in perfect
emotional health before the incident and will seek to blame Wackenhut for Doe's emotional
troubles. Wackenhut argues that it will be deprived of the opportunity to offer conflicting
evidence pertaining to Doe's emotional welfare and unable to rebut Doe's damage claim. 

 Wackenhut argues that Groves v. Gabriel is dispositive of the mental health records
issue here. See 874 S.W.2d 660 (Tex. 1994). The Groves court determined that because Groves
alleged "severe emotional damages, including 'post-traumatic stress disorder,'" she had placed
her mental and emotional condition in issue, triggering the litigation exception to the
confidentiality of mental health records, and thereby waiving the privilege as to any medical
records relevant to her claim for emotional damages. Id. at 661. 

 Unlike R.K. and Groves, based on the current pleadings in this case, no facts have
been alleged or developed that indicate Doe's mental condition is at issue on her claim that the
defendants were negligent. Her mental condition is not of any legal significance to her negligence
claim. Additionally, she has not alleged any "severe emotional condition" that would place her
mental condition in issue so as to trigger the litigation exception and waive her privilege regarding
her mental health records. Consequently, at this time, her mental health records do not appear
to be discoverable under the litigation exception to the mental health records privilege. Also
significant is the fact that there has not been an in camera inspection of any of her mental health
records. We hold that at this early stage in the litigation, based on Doe's claims in her petition
and her responses to interrogatories, her mental condition is not a part of a claim or defense. To
hold otherwise would suggest that every time a plaintiff raises a claim for past and future mental
anguish damages her mental condition would be in issue and thereby all mental health records
would be discoverable. This proposition is contrary to the express holding of the Texas Supreme
Court in Coates. See 758 S.W.2d at 749. As discovery continues in the case, an in camera
inspection may be appropriate to determine whether some mental health records should be
released. As R.K. cautioned, an in camera review ensures that the production of documents is
no broader than necessary considering all the competing interests. R.K., 887 S.W.2d at 843. 
Trial courts must use great care when permitting discovery of such sensitive information and
should redact or delete those portions of mental health records that concern matters beyond the
scope of the exception. Id. at 844. 

 We hold that at this early stage of discovery the trial court abused its discretion by
ordering Doe to produce her mental health records. 


Offensive Use Exception to Confidentiality of Mental Health Information

 Wackenhut also argued to the trial court that Doe's mental health records were
discoverable under the offensive use exception to the mental health information privilege. See
Ginsberg, 686 S.W.2d at 105. The offensive use exception prevents a party from using the
mental health privilege as both a sword and a shield. This exception prevents a party from
withholding evidence that would materially weaken or defeat the asserting party's claim. Id. at
107. 

 Wackenhut contends that due to Doe's repeated incarcerations she has received
mental health counseling both before and after the incident. Wackenhut argues that as a result,
her mental health records could materially weaken or defeat her claims. 

 The facts as developed in this case so far are distinguishable from those in
Ginsberg. The plaintiff in Ginsberg alleged that the defendant fraudulently tricked her into
signing a second deed to some property. Id. During her deposition, she testified that she could
not remember signing the second deed and that she was not aware until 1981 that the ownership
of the property had been transferred to the defendant. Without objection, the plaintiff revealed
she had been treated by a psychiatrist in 1972 and in subsequent years. The defendant sought the
mental health records relating to her treatment in 1972. The plaintiff asserted that the mental
health information was privileged, and, after an in camera inspection, the trial court ordered the
records released. One of the records contained information that was relevant as it possibly
validated the statute of limitations defense asserted by the defendant. The records showed that the
plaintiff told her psychiatrist in August of 1972 that the property at issue "was sold while we were
in Padre Island." The Ginsberg court held that the plaintiff invoked the jurisdiction of the court
seeking affirmative relief against the defendant and then attempted, on the basis of privilege, to
deny the defendant the benefit of specific evidence that would materially weaken or defeat her
claims against him. Id. at 107. The Ginsberg court went on to explain that its holding "should
not be construed as granting license to litigants to engage in 'fishing expeditions' into privileged
matters." Id. 

 At this early stage in discovery and particularly without an in camera review of
Doe's mental health records by the trial court to determine the relevance, if any, the records have
to the claims and defenses at issue, the trial court's order compelling Doe to reveal her mental
health care providers and to release her mental health records as a whole was an abuse of
discretion. Doe's second issue is sustained. 



Protective Order

 Finally, we address whether the trial court abused its discretion in denying Doe's
request for a protective order. Doe moved for a protective order requesting that the trial court
order Wackenhut's attorney to refrain from asking her questions at her deposition about her past
and present sexual activity. Doe argued to the trial court that in a similar negligence case
involving a sexual assault by a Wackenhut guard against an inmate Wackenhut deposed the
plaintiff and was allowed to ask about her past and present sexual activity and whether the sexual
assault by the Wackenhut guard was consensual. Wackenhut's answer pleads consent. (6) Doe,
however, argues that by law there can be no consent because Jenkins was a prison guard and Doe
was under a disability of incarceration. Doe contends that any attempt by Wackenhut to inquire
into her past and present sexual activity would be solely for the purposes of harassment and
embarrassment and should not be allowed. Finally, Doe argues that the "rape victims shield
laws," incorporated in Texas Rule of Evidence 412, should apply despite the fact that the Rule
specifically applies only in criminal cases. The trial court denied Doe's request. 

 At this early stage of the litigation and considering the fact that Doe pleads that this
was a forcible assault and the grand jury indicted Jenkins under the criminal statutes for the crime
of sexual assault, we hold that until the record is more fully developed and these issues are
clarified the rape shield laws ought to protect the victim, the plaintiff, at this time. We hold that
the trial court abused its discretion by failing to issue a protective order preventing Wackenhut
from questioning Doe about her past and present sexual activity. Doe's third issue is sustained. 


Conclusion


 Because, under the present state of the pleadings, Doe's mental condition is not in
issue and because the trial court ordered Doe to reveal the names of her mental health care
providers and to release all of her mental health records without any time restrictions and without
performing an in camera review of such records to determine their relevance to the issues in the
lawsuit, and because at this early stage of the litigation Doe should be protected by the rape victim
shield laws, we conclude that the trial court abused its discretion regarding all aspects of the April
11, 2000 order. We therefore conditionally grant the writ of mandamus. However, the writ will
issue only in the unlikely event that the trial court does not vacate its April 11, 2000 order and
render an order consistent with this opinion. 



 


 Mack Kidd, Justice

Before Chief Justice Aboussie, Justices Kidd and Smith

Writ of Mandamus Conditionally Granted

Filed: May 25, 2000 

Publish
1.   Doe filed suit using a fictitious name. 
2.   The protective order sought does not prevent Wackenhut from asking Doe about the sexual
incident at issue in this lawsuit. We also note that semantically one cannot have a present "sexual
history" and therefore throughout the balance of this opinion we will refer to past and present
"sexual activity." 
3.   Formerly Texas Rule of Civil Procedure 167a.
4.   Coates also sought damages for pain and suffering, physical impairment, lost earnings, and
medical expenses. 
5.   As discovery continues and the case is more fully developed, the trial court might order Doe
to submit to a mental examination without abusing its discretion. 
6.   The record before us does not contain Jenkins' answer nor can we determine from this
record Jenkins' possible defenses regarding this incident. 



ishing expeditions' into privileged
matters." Id. 

 At this early stage in discovery and particularly without an in camera review of
Doe's mental health records by the trial court to determine the relevance, if any, the records have
to the claims and defenses at issue, the trial court's order compelling Doe to reveal her mental
health care providers and to release her mental health records as a whole was an abuse of
discretion. Doe's second issue is sustained. 



Protective Order

 Finally, we address whether the trial court abused its discretion in denying Doe's
request for a protective order. Doe moved for a protective order requesting that the trial court
order Wackenhut's attorney to refrain from asking her questions at her deposition about her past
and present sexual activity. Doe argued to the trial court that in a similar negligence case
involving a sexual assault by a Wackenhut guard against an inmate Wackenhut deposed the
plaintiff and was allowed to ask about her past and present sexual activity and whether the sexual
assault by the Wackenhut guard was consensual. Wackenhut's answer pleads consent. (6) Doe,
however, argues that by law there can be no consent because Jenkins was a prison guard and Doe
was under a disability of incarceration. Doe contends that any attempt by Wackenhut to inquire
into her past and present sexual activity would be solely for the purposes of harassment and
embarrassment and should not be allowed. Finally, Doe argues that the "rape victims shield
laws," incorporated in Texas Rule of Evidence 412, should apply despite the fact that the Rule
specifically applies only in criminal cases. The trial court denied Doe's request. 

 At this early stage of the litigation and considering the fact that Doe pleads that this
was a forcible assault and the grand jury indicted Jenkins under the criminal statutes for the crime
of sexual assault, we hold that until the record is more fully developed and these issues are
clarified the rape shield laws ought to protect the victim, the plaintiff, at this time. We hold that
the trial court abused its discretion by failing to issue a protective order preventing Wackenhut
from questioning Doe about her past and present sexual activity. Doe's third issue is sustained.