TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-02-00180-CV






In re Allissa M. Chambers






ORIGINAL PROCEEDING FROM TRAVIS COUNTY






 Relator, Allissa Chambers, seeks mandamus relief from a March 22, 2002 Order on
Motion to Quash allowing discovery of her mental health records contained in documents
subpoenaed from the Texas Rehabilitation Commission (the "Commission"). Chambers sought to
prohibit the release of these records by quashing her adversary's subpoena to the Commission. After
a hearing, the district court viewed the sealed records in camera and ruled without limitation that
they were relevant and discoverable. The sealed records are before us on Chambers's petition for
writ of mandamus. Because we find that the district court's March 22 order is inconsistent with the
supreme court's opinions in R.K. v. Ramirez, 887 S.W.2d 836, 842 (Tex. 1994) and Coates v.
Whittington, 758 S.W.2d 749, 753 (Tex. 1988), as well as with this Court's opinion in In re Doe, 22
S.W.3d 601, 606 (Tex. App.--Austin 2000, orig. proceeding, mand. granted), we will conditionally
grant relief.


FACTUAL BACKGROUND


 Chambers filed the underlying lawsuit against Josie Valdez d/b/a Valdez Remodeling
and others arising out of Valdez's remodeling of Chamber's home through a community
development block grant program. Valdez and Chambers executed a contract for the work in
September 1995. Disputes concerning the performance of the remodeling work led Chambers to file
the underlying lawsuit in 1997, alleging claims against Valdez for breach of contract, violations of
the Texas Deceptive Trade Practices and Consumer Protection Act ("DTPA"), Tex. Bus. & Com.
Code Ann. §§ 17.46, .50 (West Supp. 2002), fraud, as well as negligence per se, conspiracy and
misrepresentations regarding the removal of lead-based paint. In addition to economic damages,
Chambers pleaded recovery for mental anguish. Additionally, Chambers initially claimed as
damages her alleged inability to complete a job training program at the Commission because of the
stress and upheaval attendant to this dispute. She identified her caseworker at the Commission as
a person with knowledge of relevant facts. 

 Valdez subpoenaed Chambers's records from the Commission through a deposition
on written questions. Chambers objected and withheld the documents claiming privilege and
confidentiality. At the hearing held on this issue, Chambers's attorney in open court waived any
claims for medical expenses and any claims related to Chambers not being able to complete her
vocational rehabilitation at the Commission as a result of the contract dispute. Instead, her attorney
stipulated that Chambers claimed only generic mental anguish as a result of the dispute in question. 
Despite the stipulation and waiver, Valdez argued that Chambers had placed her mental health
history in issue by her answers to interrogatories and deposition testimony.

 The district court conducted an in camera inspection of the records but ordered the
sixty-eight pages of Chambers's records at the Commission produced to Valdez without any
limitation. The pertinent findings in the district court's order are:


1. Ms. Chambers has put her history with the Texas Rehabilitation
Commission in issue in this case;


2. Ms. Chambers has put her mental history at issue in this case; and


3. The Texas Rehabilitation Commission's records, which have been
withheld, are relevant on both grounds asserted by the Defendants, and are
therefore discoverable.



Valdez's two grounds for discovering Chambers's mental health records referred to in the order
were: (1) Chambers's interrogatory answer listing her caseworker at the Commission as a person
with knowledge of relevant facts; and (2) Chambers's deposition testimony regarding her mental
health history. This, Valdez asserted, placed any records "relevant" to Chambers's vocational
rehabilitation and mental health in issue.

 Chambers was asked in her deposition about her alleged mental anguish. She testified
specifically that as a result of the contract dispute and the condition of her home she had suffered
"stress and duress," "difficulty sleeping," "nightmares," "anxiety attacks," "numerous breakdowns,"
"difficulty breathing," and "heart palpitations." (1) When asked, Chambers admitted that she suffered
from depression in the past and had been prescribed anti-depressants. The questioning of Chambers
was as follows:


Q: Now, . . . you were telling me about problems with sleeping, worrying about the
case, things like that. Have you seen a physician for any of those things?


A: I've gone, you know, to various physicians to try to get antidepressants. One
was a general practitioner and one was a psychiatrist at UT. I went to People's
Community Clinic.


 * * *

Q: How about the psychiatrist? Who is that?


A: . . . He is with the University of Texas in the psychology department or
psychiatry department.


 * * *


Q: Okay. Are you currently on any prescriptions from either of those two
physicians?


A: I just recently stopped my prescriptions.


Q: When did they start? When did you start treatment with either Doctor Pampa
or the UT psychiatrist? 


A: I started with Pampa in the summer of '98. And then with the UT psychiatrist,
I began-hang on a minute. . . . I believe it was the fall of 1997. And then prior
to that, it was through the health clinic. And I can't think of anything else right
now. I think there might be one other psychiatrist somewhere in there.


Q: Apart from the antidepressants, were you prescribed any other drugs or
medication?


A: No. But Doctor Pampa felt that it was not working, and he wanted to send me
to, you know, someone who could do a more thorough evaluation.


Q: And did he do that?


A: He sent me. I have not gone, just due to the fact that evaluations cost a heck of
a lot of money.


Q: Were any of these symptoms present in February of this year [1999]?


A: Yes. 



(Emphasis added.) Valdez's work on Chambers's home began in September 1995. The underlying
lawsuit was filed in 1997; Chambers's deposition was taken in 1999.

 The sealed Commission records before us concern an event that occurred in the late
1980s. The medical records primarily were generated in 1990 and 1992, and one document was
prepared in 1993. Only one document was generated after Valdez's work on Chambers's home
began in 1995. This 1995 document, however, appears to relate to the 1980s event rather than to
Valdez's work.


DISCUSSION


 A writ of mandamus is available to correct a clear abuse of discretion when there is
no adequate remedy at law. Walker v. Packer, 827 S.W.2d 833, 839 (Tex. 1992). A court abuses
its discretion when it reaches a decision so arbitrary and unreasonable that it amounts to a clear and
prejudicial error of law. Id.; Doe, 22 S.W.3d at 604. A district court abuses its discretion with
regard to factual matters when it reaches an arbitrary conclusion contrary to the only conclusion the
facts support. Walker, 827 S.W.2d at 839; In re Wallingford, 64 S.W.3d 22, 24 (Tex. App.--Austin
1999, orig. proceeding). District courts are accorded less discretion in deciding legal principles, and
mandamus will lie to remedy a clear failure by the district court to analyze and apply the law
correctly. See Walker, 827 S.W.2d at 840; Wallingford, 64 S.W.3d at 24.

 Communications between patient and physician are confidential and shall not be
disclosed in civil cases. Tex. R. Evid. 509(c)(1), 510(b)(1). Records of healthcare providers
regarding the identity, diagnosis, evaluation or treatment of the patient shall not be disclosed in civil
cases. Tex. R. Evid. 509(c)(2), 510(b)(2). In Coates v. Whittington, 758 S.W.2d 749, 753 (Tex.
1988), the supreme court held that a plaintiff's assertion of a routine mental anguish claim arising
out of an injury does not place her mental health into controversy and did not constitute "good cause"
for compelling her to submit to a mental examination. Id.

 Coates established a three-prong test to determine whether a plaintiff has put into
controversy her mental condition so as to justify an involuntary mental exam: (1) it is shown that the
exam will or is likely to produce relevant evidence, i.e., the plaintiff's mental status must be relevant
to issues that are genuinely in controversy; (2) there must be a reasonable nexus between the
condition in controversy and the examination sought; and (3) the defendant must demonstrate that
it is not possible to obtain the desired information through less intrusive means. Id. at 753.

 The issues in this case also implicate this Court's decision in Doe. In that case, the
plaintiff, a former inmate of a privately managed Travis County jail facility, alleged rape while in
custody. She was compelled by the district court to reveal her mental healthcare providers and
mental health records, and to submit to a mental examination. We held that the order compelling
release of her mental health records without first determining relevance and without any restrictions
was an abuse of discretion. Doe, 22 S.W.3d at 611. Doe held that a plaintiff's mental condition is
in issue "only if the plaintiff asserts a mental injury that exceeds the common emotional reaction to
an injury or loss." Id. at 606. Unless the plaintiff seeks to recover for a "permanent mental injury"
or a "deep seated emotional disturbance or psychiatric problem," her mental condition or history is
not "in controversy." Id.

 Relevant factors in this determination are whether the plaintiff sought any type of
psychiatric treatment in connection with the injuries giving rise to the lawsuit or proposes to use such
evidence to prove her claim of mental anguish at trial. Id.; Midkiff v. Shaver, 788 S.W.2d 399, 402-03 (Tex. App.--Amarillo 1990, orig. proceeding). That the plaintiff had past mental problems or
complaints of depression is "peripheral" to determining what is "in controversy." Coates, 758
S.W.2d at 752; Doe, 22 S.W.3d at 606. Past problems or complaints of depression are distinct from
the mental anguish associated with a personal injury; a tortfeasor takes a plaintiff as he finds her. 
Id.

 The supreme court elaborated on the patient-litigant exception to the confidentiality
of mental health records in Ramirez, 887 S.W.2d at 842. The court held that a mental condition
becomes a "part" of a claim or defense if the pleadings indicate that the jury must make a factual
determination regarding the condition itself. Id. A patient's communications with a mental health
professional are relevant to the merits of an action only if the condition itself is of legal consequence
to a party's claim or defense. The court said:


The patient-litigant exception to the privileges applies when a party's condition
relates in a significant way to that party's claim or defense. Communications and
records should not be subject to discovery if the patient's condition is merely an
evidentiary or intermediate issue of fact, rather an "ultimate" issue of a claim or
defense, or if the condition is merely tangential to a claim rather than "central" to it. 
The scope of the exception should be tied in a meaningful way to the legal
consequences of the claim or defense. 



Id. 


A Complaint-Allegation Rule?

 Valdez's position in this case underscores the import of the supreme court's language
in Ramirez that the question of whether a mental condition is a part of a claim or defense is to be
determined from the plaintiff's pleadings, without reference to evidentiary matters:


Whether a condition is a part of a claim or defense should be determined on the face
of the pleadings, without reference to the evidence that is allegedly privileged. 
Presumably, an in camera inspection could reveal that the records are entirely
irrelevant or highly prejudicial. In either case, the nature of the evidence has no
bearing on the issue of whether the patient's condition, if found, is a fact to which the
law assigns significance.



Id. at 843 n.7. Here, there is nothing in Chambers's pleadings that alleges more than a routine
mental anguish claim. Indeed, the primary thrust of Chambers's petition deals with economic
damages resulting from a home remodeling project. In the entire petition, mental anguish appears
only once in the damages paragraph at the end of the petition. Chambers's petition does not put her
mental health into controversy. Valdez argues, however, that Chambers put her past mental health
into controversy by her interrogatory answers and deposition testimony.

 Chambers's attorney stipulated unequivocally in open court that Chambers was
asserting only a generic mental anguish claim, and she would make no claim for medical expenses
or any damages in connection with her vocational rehabilitation at the Commission. These
stipulations underscored Chambers's pleadings.

 Moreover, Valdez's contention that Chambers's discovery answers placed her mental
health into controversy is unconvincing. It is not entirely clear that Chambers testified in her
deposition that she sought treatment for depression as a result of any injury she suffered in
connection with the subject matter of the lawsuit, as Valdez suggests. At most, her testimony
establishes that she sought treatment for depression, at least in part, during the same period that the
events giving rise to this lawsuit occurred. Mental health records are not "in issue" simply because
they were generated at a time corresponding to the events giving rise to a lawsuit.

 An adversary may not make a patient's mental health records a "part" of a claim or
defense by simply inquiring about the patient's mental health history during discovery. Identifying
a person with possession of one's mental health records as a person with knowledge of relevant facts,
by itself, does not place those records "in issue." 

 Finally, we reject Valdez's argument that Chambers waived her privilege under rules
of evidence 509 and 510 because Valdez obtained copies of Chambers's medical records from
another health care provider (whose records are not at issue here) and those records contain
documents that allude to Chambers' mental health condition. In no sense is the presence of
extraneous matters in a patient's medical records a knowing waiver of privilege by the patient. 
Patients rarely are aware of the contents of their medical records. Copies of other health care
provider's medical reports, narratives, tests, evaluations and the like are often found in medical
records. Obtaining thorough medical histories and consultations is crucial to medical care and
treatment. The policies underlying rules 509 and 510 are designed to protect and facilitate the
rendition of good medical and psychological care, not to inhibit it. See Ginsberg v. Fifth Court of
Appeals, 686 S.W.2d 105, 107 (Tex. 1985).


CONCLUSION


 The district court's March 22 order essentially reached two conclusions: (1) that
Chambers had put her vocational rehabilitation history at the Commission in issue, and (2) that
Chambers had put her mental health history in issue. Therefore, the district court held, Valdez was
entitled to the records in question which related to both matters. Regarding the first conclusion,
Chambers's attorney's stipulation and waiver in open court removed Chambers's vocational
rehabilitation history as a disputed matter in the lawsuit. Consequently, the district court abused its
discretion in determining that Chambers placed her vocational rehabilitation history in issue.

 The court's second conclusion is a closer question. The sealed records involve an
incident that occurred well before the events in question in this litigation. All of the sealed records,
save one, were generated before the time period in question. The district court should reevaluate its
second conclusion regarding Chambers's mental health history in view of the pleadings and the legal
authorities and standards set forth above. Therefore, we conditionally grant the writ of mandamus
with the expectation that the trial court will conduct further proceedings consistent with this opinion.

 The district clerk is hereby ordered to take custody of the sealed records and maintain
them as directed. The documents delivered to this Court under seal are ordered to remain under seal
until further order of the district court or this Court.



 

 Mack Kidd, Justice

Before Justices Kidd, Patterson and Puryear

Filed: June 27, 2002

Do Not Publish

1. This testimony is very similar to that in In re Doe, 22 S.W.3d 601, 610 (Tex. App.--Austin
1994, orig. proceeding, mand. granted), which this Court held to be insufficient to raise a claim for
mental injury or disease, deep-seated emotional disturbance or a psychiatric condition which is
necessary to place the plaintiff's mental health records in issue.