TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-04-00366-CV







In re David Nance, Individually, and as Representative of the Estate of Rozene Nance, Deceased; Quinton Singleton; Michael Lance; Crystal Lance; 

Kassie Singleton; and Lloyd Singleton






ORIGINAL PROCEEDING FROM LAMPASAS COUNTY





O P I N I O N




 In this mandamus proceeding arising out of a medical malpractice death action, we
are asked to vacate an order denying a motion to quash a defendant's request for the deceased's
psychiatric records. Based on the governing law as applied to the present record, we will
conditionally grant the writ.


BACKGROUND


 Rozene Nance died on August 6, 2002, at the age of forty-three, after undergoing a
laparoscopic cholecystectomy (1) performed by Dr. Lan Nguyen at Rollins Brook Community Hospital
on the evening of August 5. It is alleged that Ms. Nance presented herself to the hospital's
emergency room on August 1 and was admitted. Her complaints or condition at presentation are in
dispute. The defendants allege that Ms. Nance was admitted for "possible alcohol withdrawal
syndrome," but the hospital records also allegedly indicate that Ms. Nance denied regular use of
alcohol. After her admission, Ms. Nance developed nausea, vomiting, and abdominal pain. She
underwent an abdominal ultrasound on August 5, which indicated the presence of gall stones. Dr.
Nguyen operated on Ms. Nance to remove these gall stones, and the operative notes indicate a
routine procedure.

 By the next morning, however, Ms. Nance experienced seizures, dilated pupils, and
at least one episode of apnea, cessation of breathing. Another physician ordered a blood transfusion
and had Ms. Nance transported to Metroplex Hospital in Killeen, where she arrived about 10:00 a.m.
on August 6. Surgery commenced immediately. Upon opening Ms. Nance's abdomen, the surgeon
reported that blood poured out under pressure at the junction of her aorta and splenic artery. The
bleeding could not be controlled and she developed "dilutional coagulopathy." (2) The surgery was
completed by 2:30 p.m. and Ms. Nance was given two more units of blood. At 3:00 p.m., Ms. Nance
went into cardiac arrest and died. An autopsy concluded the cause of death to be "hemorrhagic
shock and hemorrhagic pancreatitis." Simply put, she bled to death internally.

 The estate and wrongful death beneficiaries of Rozene Nance, David Nance, Quinton
Singleton, Michael Lance, Crystal Lance, Kassie Singleton, and Lloyd Singleton (the Nances), sued
Metroplex Adventist Hospital, Inc. d/b/a Rollins Brook Community Hospital and Rollins Brook
Community Hospital, Inc. (the Hospitals) and Dr. Nguyen for negligence in the care and treatment
of Ms. Nance for gall stones. 

 The defendants subpoenaed through depositions on written questions all of Ms.
Nance's medical and psychiatric records from four different health care providers; Dr. Nguyen
specifically sought Ms. Nance's records from the Texas Department of Mental Health and Mental
Retardation ("MHMR"). The Nances sought to limit discovery. As for the MHMR records, they
asserted a relevance objection and the physician-patient privilege under Texas Rule of Evidence 509. 
The trial court heard the Nance's motions to quash on March 12, 2004, at which time the Nances
tendered the pertinent records for an in camera inspection. On May 21, 2004, the district court
issued an order denying all relief. The order did not state whether the court had inspected the records
in camera and did not place any limitations on the use of the information contained in the records. 
 The Nances subsequently brought this original proceeding, contending that the trial
court clearly abused its discretion with respect to Ms. Nance's MHMR records. They do not
complain about any other records addressed by the trial court's order. 


DISCUSSION


Standards for mandamus

 Mandamus is only available to correct a clear abuse of discretion or the violation of
a duty imposed by law and only in situations where there is no other adequate remedy at law. Walker
v. Packer, 827 S.W.2d 833, 839 (Tex. 1992); Johnson v. Fourth Court of Appeals, 700 S.W.2d 916,
917 (Tex. 1985). As a matter of law, there is no adequate remedy at law for a decision denying a
privilege. In re Monsanto Co., 998 S.W.2d 917, 922 (Tex. App.--Waco 1999, orig. proceeding).

 The party asserting a privilege has the burden to prove its application, and, if the issue
of waiver is raised, the same party has the burden of proving that the privilege was not waived. 
Jordan v. Fourth Court of Appeals, 701 S.W.2d 644, 648-49 (Tex. 1985) (orig. proceeding). To
make a prima facie showing of privilege, the party asserting a privilege must: (1) specifically plead
the privilege; (2) produce evidence to support it either by affidavit or testimony; and, if necessary,
(3) submit the allegedly privileged items for an in camera inspection. Peeples v. Fourth Court of
Appeals, 701 S.W.2d 635, 637 (Tex. 1985) (orig. proceeding) ("We hold that a party who seeks to
exclude documents, records or other matters from the discovery process has the affirmative duty to
specifically plead the particular privilege or immunity claimed"); Marathon Oil Co. v. Moye, 893
S.W.2d 585, 589-90 (Tex. App.--Dallas 1994, orig. proceeding).


The parties' contentions

 In this proceeding, the Nances argue that Ms. Nance's mental health history, as
detailed in the MHMR records, is not relevant to the circumstances of her death and that the records
are privileged from discovery under both the physician-patient privilege, see Tex. R. Evid. 509, and
the mental health privilege, see Tex. R. Evid. 510. Dr. Nguyen and the hospitals respond that Ms.
Nance's mental health records are relevant and discoverable under the patient-litigant exception to
these privileges because (1) they relate to the Nances' damage claims for mental anguish, loss of
consortium, and loss of pecuniary services, which they contend place her mental health history in
issue; and (2) they relate to causation because heavy consumption of alcohol can be a cause of
pancreatitis, and could have caused Ms. Nance's post-operative bleeding. The defendants also argue
that the Nances have waived any privilege under the offensive use doctrine. They also urge that the
Nances waived their mental health information privilege claim, pointing out that in the district court,
the Nances asserted only a relevance objection and the physician-patient privilege under Texas Rule
of Evidence 509. 

 We agree with the defendants that the Nances waived their mental health information
privilege claim by failing to assert it specifically in the trial court. Jordan, 701 S.W.2d at 648-49; 
Peeples, 701 S.W.2d at 637; Kavanaugh v. Perkins, 838 S.W.2d 616, 620 (Tex. App.--Dallas 1992,
orig. proceeding). As a result, the only privilege potentially available to shield Ms. Nance's MHMR
records is the physician-patient privilege of rule 509.


Physician-patient privilege

 Under rule 509 of the Texas Rules of Evidence, "[c]onfidential communications
between a physician and a patient, relative to or in connection with any professional services
rendered by a physician to the patient are privileged and may not be disclosed." Tex. R. Evid.
509(c)(1). Likewise, "[r]ecords of the identity, diagnosis, evaluation, or treatment of a patient by
a physician that are created or maintained by a physician are confidential and privileged and may not
be disclosed." Id. 509(c)(2). The privilege is not limited solely to records held by a physician, but
may extend to those held by certain persons acting at the direction of a physician or who are involved
in the patient's consultation, examination, or interview. (3) The purposes of the privilege are to: (1)
encourage communications necessary to effective medical treatment, and (2) prevent unnecessary
disclosure of highly personal information. R.K. v. Ramirez, 887 S.W.2d 836, 840 (Tex. 1994) (citing

Ginsberg v. Fifth Court of Appeals, 686 S.W.2d 105, 107 (Tex. 1985) (orig. proceeding) and Ex
Parte Abell, 613 S.W.2d 255, 262 (Tex. 1981) (orig. proceeding)). 

 At least some of the records sought by defendants and submitted to the trial court in
camera appear to implicate the physician-patient privilege. (4) We thus consider whether such records
are discoverable under one of the exceptions to the privilege. 

 The supreme court analyzed the patient-litigant exception to the physician-patient
privilege and the parallel exception to the mental health information privilege in R.K. v. Ramirez. 
The court held that this exception applies when: (1) the records are relevant to the condition at issue
in the litigation, and (2) the condition contained in the records is relied upon as a "part" of a party's
claim or defense. 

 Whether a plaintiff's condition is a "part" of a claim is determined from the pleadings,
without reference to the evidence that is allegedly privileged. R.K., 887 S.W.2d at 843 n.7; In re
Doe, 22 S.W.3d 601, 609 (Tex. App.--Austin 2000, orig. proceeding). To be a "part" of a claim or
defense, the condition itself must be a fact that alone carries legal significance under the substantive
law. R.K., 887 S.W.2d at 842-43 ("Because relevance is defined so broadly, virtually any litigant
could plead some claim or defense to which a patient's condition could arguably be relevant and the
privilege would cease to exist. We reject this alternative as well."). To illustrate the "part" of
concept, the supreme court cited the example of an allegation that a testator is incompetent. Such
a mental condition, if found, would be a factual determination to which legal consequences attach:
the testator's will would no longer be valid. Id. at 842-43. "In other words," the supreme court
explained, "information communicated to a doctor . . . may be relevant to the merits of an action, but
in order to fall within the litigation exception to the privilege, the condition itself must be of legal
consequence to a party's claim or defense." Id. at 843. 

 "As a general rule," the supreme court explained, " a mental condition will be a 'part'
of a claim or defense if the pleadings indicate that the jury must make a factual determination
concerning the condition itself." Id. It also observed that "[c]ommunications and records should
not be subject to discovery if the patient's condition is merely an evidentiary or intermediate issue
of fact, rather than an 'ultimate' issue of a claim or defense, or if the condition is merely tangential
to a claim rather than 'central' to it." Id. at 842.

 Assuming both the relevance and "part" of requirements are met by the pleadings, the
trial court must then perform an in camera inspection of the documents at issue. Id.; M.A.W. v. Hall,
921 S.W.2d 911, 914 (Tex. App.--Houston [14th Dist.] 1996, orig. proceeding). 

 In their brief to this Court, the defendants argue that the records are discoverable in
this case because they are relevant to their defensive theories on causation and damages. They argue
the records are relevant to or part of their causation defense because Ms. Nance's mental health
history may establish heavy alcoholism that, in turn, might help show that she was predisposed to
the bleed that resulted, and that this pre-disposition, and not the surgery, was the cause of the bleed.
The defendants also assert that Ms. Nance's general health and mental condition bear upon the
Nances' damage claims for loss of consortium and loss of Ms. Nance's pecuniary services.

 Applying the R.K. standards, as we must, to the pleadings in this case, Ms. Nance's
mental health history is not a "part" of either the Nances' claims or the defendants' defenses. The
Nances' pleadings allege only facts and circumstances surrounding Ms. Nance's 2002
hospitalization, surgery, follow-up care, and the damages suffered as a result of her death. Nothing
in any of these pleadings places Ms. Nance's mental health history in dispute. The fact that a
plaintiff had past mental problems is distinct from the mental anguish associated with a personal
injury or loss; a tortfeasor takes a plaintiff as he finds him or her. In re Doe, 22 S.W.3d at 606; (5) see
also Coates v. Whittington, 758 S.W.2d 749, 753 (Tex. 1988) (plaintiffs asserting routine mental
anguish claims arising out of personal injury do not place their mental health into dispute). 
Furthermore, the issue of whether Ms. Nance was an alcoholic or a heavy drinker is, at most, an
intermediate issue of fact regarding the claims for emotional and pecuniary loss by her family, and
the defensive theory that a pre-existing condition caused her death. See R.K., 887 S.W.2d at 842.
Although the hospitals pleaded preexisting condition as an alternative and affirmative defense, (6) that
defensive theory is in the nature of an inferential rebuttal, not an ultimate issue of fact that alone has
legal significance. Id. at 843; see also Tex. R. Civ. P. 277. (7) We hold that the records in question,
if protected by the physician-patient privilege, are not discoverable under the patient-litigant
exception to that privilege. 


Offensive use of physician-patient privilege

 Defendants also argue that the MHMR records are discoverable under the offensive
use doctrine. This doctrine is a type of waiver that occurs if the plaintiff uses a privilege offensively
to shield information that would be material and relevant to the defense against the plaintiff's claims. 
See Ginsberg v. Fifth Court of Appeals, 686 S.W.2d 105, 106 (Tex. 1985). Ginsberg involved the
mental health information privilege of rule 510. There, the court held that a plaintiff "cannot use one
hand to seek affirmative relief in court and with the other lower an iron curtain of silence against
otherwise pertinent and proper questions which may have a bearing upon his right to maintain his
action." Id. at 108 (quoting Pavlinko v. Yale-New Haven Hosp., 192 Conn. 138, 470 A.2d 246, 251
(1984) (involving Fifth Amendment privilege against self-incrimination)). The supreme court found
these Fifth Amendment cases persuasive, noted that they have been applied in cases involving other
privileges, and cited several cases involving the physician-patient privilege. Id. (citing, among others
cases, Mull v. String, 448 So.2d 952, 954 (Ala. 1984); Sagmiller v. Carlsen, 219 S.W.2d 885, 896
(N.D. 1974); Mattison v. Poulen, 134 Vt. 158, 163, 353 A.2d 327, 331 (1976)). 

 The supreme court has mandated that the following factors be used to determine
whether offensive use-waiver has occurred:


First, before a waiver may be found the party asserting the privilege must seek
affirmative relief. Second, the privileged information sought must be such that, if
believed by the fact finder, in all probability it would be outcome determinative of
the cause of action asserted. Mere relevance is insufficient. A contradiction in
position without more is insufficient. The confidential communication must go the
very heart of the affirmative relief sought. Third, disclosure of the confidential
communication must be the only means by which the aggrieved party may obtain the
evidence. If any one of these requirements is lacking, the trial court must uphold the
privilege.



Republic Ins. Co. v. Davis, 856 S.W.2d 158, 163 (Tex. 1993) (internal footnotes omitted). The first
prong of the test is satisfied on the current record. We need not address whether the second prong
is met because, given the early state of discovery in this case, there is no indication that the MHMR
records are the only source from which defendants can obtain information about Ms. Nance's
drinking habits or other matters that might be contained in the records. 

 Defendants speculate that Ms. Nance's family members may not be helpful in
disclosing information establishing Ms. Nance's heavy drinking. But defendants set forth no facts
to support their fears that the Nances will hide harmful facts and disclose only self-serving ones, or
that the family members have frustrated discovery in any way. If the defendants ultimately cannot
obtain discovery to support their theories from the family members or other sources, they can revisit
the issue with the trial court. On the current record, however, the Davis test for waiving a privilege
by offensive use is not satisfied. 


Lack of protective restrictions

 The Nances also complain about the failure of the district court to restrict the
disclosure or dissemination of any records that might be found to be discoverable. The supreme
court has made clear that courts have an obligation to safeguard privileged information even if only
part of the information or records involved are privileged. In Mutter v. Wood, the supreme court
said: "Judge Wood's order should have been drawn more restrictively to respect whatever privileged
communications or records might exist after suit is filed and to allow those privileges to be
preserved." 744 S.W.2d 600, 601 (Tex. 1988) (granting mandamus against order requiring plaintiffs
to sign overbroad release of medical records). Any disclosure should be no broader than necessary
and it is a trial court's obligation to oversee and safeguard the records to ensure unnecessary matters
are not disclosed. See R.K., 887 S.W.2d at 843. In Davis, the supreme court said that if the
communication "goes beyond issues dealing with the affirmative relief sought, the trial court should
redact any part of the privileged communication that does not relate to the affirmative relief sought." 
Davis, 856 S.W.2d at 163 n.10. The irrelevant portions of the records, should be redacted, deleted,
or otherwise protected by the trial court. R.K., 887 S.W.2d at 844; M.A.W., 921 S.W.2d at 915. 

 Thus, with respect to any records the trial court finds to be discoverable, it should
limit disclosure of any privileged matters contained therein, such as through redaction. In these
defendants' response to the Nances' motion to quash, they stated that they were "willing to enter into
a confidentiality order" limiting the use of the records to only that necessary for the defense of the
litigation. Such a measure might also be ordered by the trial court as a means of avoiding
unnecessary disclosure.


CONCLUSION


 We recognize the difficulties faced by the district court in addressing the complex
privilege issues presented here without benefit of the resources appellate courts possess. 
Nonetheless, we must conditionally grant the writ of mandamus unless and until the district court:


1. Vacates its order of May 21, 2004;


2. Reviews the documents at issue in camera to determine whether each is subject
to the physician-patient privilege of Texas Rule of Evidence 509. This inquiry
should be guided by the general rule of privilege in Texas Rule of Evidence
509(c)(1) & (2) and the definition of confidential communication" in rule
509(a)(3).


3. As to any documents the court finds to be protected by physician-patient
privilege, sign an order that the documents are protected from disclosure at this
time; and 


4. As to any documents the court finds not to be protected by the physician-patient
privilege, permit disclosure to the extent necessary while protecting any
privileged information contained in those documents by redaction or other
protective measures. 



 __________________________________________

 Bob Pemberton, Justice

Before Justices Kidd, B. A. Smith and Pemberton

Filed: August 12, 2004
1. Laparoscopic cholecystectomy is a surgical procedure to remove a diseased gall bladder
through a laparoscope (a fiberoptic device consisting of a flexible tube in which glass or plastic
filaments allow internal refraction of light for viewing). Patients are usually home within 24 hours
and symptoms improve for over 90 percent of patients. Online Medical Dictionary, http://www.
online-medical-dictionary.org/?q=Laparscopic+Cholecystectomy.
2. "Coagulopathy" means a deficiency in the clotting mechanisms of the blood, insufficient 
platelets so that the blood is unable to clot (form insoluble viscous, fibrin masses in the vessels). 
Online Medical Dictionary, http://www.online-medical-dictionary.org/?q=Coagulopathies%2C+
Consumption. "Dilutional coagulopathy" means that blood is diluted to the extent that there is not
a sufficient amount of platelets to allow the blood to clot.
3. Tex. R. Evid. 509(a)(3).
4. The records in question have been tendered to this Court under seal. Many are plainly
covered by the physician-patient privilege, such as those prepared by a physician. On the other hand,
those prepared by non-physicians might or might not be subject to the privilege, depending on
whether the conditions of rule 509(a)(3) are satisfied. 
5. This Court's opinion in In re Doe involved a female inmate of a privately managed jail
facility who alleged she was raped while in custody. 22 S.W.3d 601 (Tex. App.--Austin 1994, orig.
proceeding, mand. granted). She was compelled by the district court to reveal her mental health
providers and mental health records and to submit to a mental examination. This Court held that
compelling release of her mental health records without first determining relevance and without any
restrictions was an abuse of discretion. Id. at 611. Doe held that a plaintiff's mental condition is in
issue "only if the plaintiff asserts a mental injury that exceeds the common emotional reaction to an
injury or loss." Id. at 606. Unless the plaintiff seeks to recover for a "permanent mental injury" or
a deep seated emotional disturbance or psychiatric problem" her mental condition or history is not
"in controversy." Id. That a plaintiff had past mental problems is "'peripheral'" to determining what
is in controversy. Id. (quoting Coates v. Whittington, 758 S.W.2d 749, 752 (Tex. 1988)).
6. The hospitals alleged that any injuries "were caused only by . . . pre-existing conditions,
injuries, diseases, accidents, causes or events and disabilities or subsequent conditions, injuries,
diseases, accidents, causes or events, or disabilities of Plaintiffs" that were not a result of anything
done by the hospitals. 
7. An inferential rebuttal issue disproves the existence of an essential element submitted in
another issue or question. Select Ins. Co. v. Boucher, 561 S.W.2d 474, 477 (Tex. 1978). It presents
a contrary or inconsistent theory from the claim relied upon for recovery. Id. Inferential rebuttal
issues attempt to disprove a claim by establishing the truth of a positive factual theory that is
inconsistent with some factual element of the ground of recovery. Id. "Inferential rebuttal questions
shall not be submitted in the charge." Tex. R. Civ. P. 277.